52 So.2d 437

**SUN OIL CO. v. TARVER et al.**

No. 39825.

March 19, 1951.

Rehearing Denied April 23, 1951.

& Bolton, Rayville, Dhu Thompson, Redmond & Harkey, Monroe, Tucker, Bronson & Martin, Hargrove, Guyton, Van Hook & Hargrove, Shreveport, for defendants-appellees.

McCALEB, Justice.

These consolidated actions involved ownership of a 56 acre tract in the Delhi Oil Field. Two of the suits are concursus proceedings instituted by the Sun Oil Company, in which all interested claimants to the proceeds of oil produced from two parcels composing the tract are cited to assert their claims. The other is a proceeding by Molean Russell Peet and James Monroe Russell and their assignee, D'Arnold Davis, asserting an undivided ownership in the successions of their great-grandparents, Henry and Susan Eaton, accepting these successions and praying to be sent into possession thereof with other heirs in undivided proportions and to have annulled a judgment rendered in the original succession proceedings in which the other claimants to the land, or their transferors, were recognized as the sole heirs of Henry and Susan Eaton and sent into possession of all property formerly owned by them.

The land in contest was acquired on November 2, 1887 by Henry Eaton while he was living with Susan Eaton, to whom he was purportedly married during slavery. Eleven children were born of this union. Susan Eaton died during 1892 and,

James J. Morrison, New Orleans, for defendant-appellant.

Carey J. Ellis, Jr., Coenen & Coenen, John C. Morris, Jr., Warren Hunt, Cotton

on September 28, 1893, Henry Eaton contracted a second marriage with one Dilsey Hedgeman. Two children survived this marriage which was dissolved by the death of Henry Eaton in 1903. The defendants and appellees in the case are heirs or transferees of heirs of Henry and Susan Eaton. These parties, some twenty odd in number, were made respondents by the Sun Oil Company in the concursus proceedings and, their interests having been consolidated, they have united in resisting the claims of D'Arnold Davis as assignee of James Monroe Russell and Molean Russell Peet. It suffices therefore to refer to appellees as Tarver, et al.

The claims of James Monroe Russell and Molean Russell Peet, to which D'Arnold Davis has succeeded, are founded on their alleged relationship as grandchildren of Cornelius or Neal Eaton, who was one of the eleven children of Henry and Susan Eaton. They assert that Neal Eaton married one Nancy Johnson in 1880 or 1881 and that one child, Willie Eaton, was the sole issue of that marriage; that Neal and Nancy Eaton lived near Delhi until 1896, when Neal died; that thereafter Nancy was married a second time to a man named "Russell" and that Willie Eaton subsequently used the name of his step-father, Russell, being known as "Willie Russell". It is further claimed that "Willie Russell" married one Julia Washington on September ber 3, 1919; that four children were born of the marriage, viz., Willie Russell, Nancy Russell Orr [1] and assignors, Molean Russell Peet and James Monroe Russell and that these children succeeded to the interest of their father "Willie Russell" now deceased.

The defendants denied the pretensions of James Monroe Russell and Molean Russell Peet and, during the trial, filed pleas of prescription of ten and thirty years including therein the thirty year limitation provided by Article 1030 of the Civil Code.

After hearing the evidence, the judge maintained the factual contentions, that is, the pedigrees asserted by Molean Russell Peet and James Monroe Russell but, being of the opinion that their claims were prescribed by failure to accept the successions of Henry and Susan Eaton within thirty years of their demise, sustained the plea of prescription and rejected the demand of their assignee, D'Arnold Davis. He has prosecuted this appeal from the adverse decision.

Appellees, Tarver, et al., maintain in this court that the judgment was in error in finding that appellant established that Willie Russell, father of appellant's transferors, was Willie Eaton, son of Neal Eaton, and their counsel argue at length that the evidence produced by appellant is neither certain nor reliable as it consists

---

1. Willie Russell and Nancy Russell Orr have ceded their interest to appellees, Tarver, et al. Thus, the only adverse claimant to the land is Davis, assignee of Molean Russell Peet and James Monroe Russell.

merely of statements based on rumor or hearsay and perjured testimony.

The trial judge was not impressed with the oral evidence produced by appellant for, in his comprehensive written opinion on the facts and law of the case, he stated: "The evidence of the family history of the Eatons comes from negro witnesses who possess but slight knowledge thereof and their statements appear generally to come out of rumor, gossip or rank hearsay. Except for certain legal proceedings, a few marriage licenses and legal transfers of property material facts would be most obscure, to say the least."

However, after considering the unsatisfactory oral evidence with the documentary evidence, the judge became convinced that appellant had proved with reasonable certainty that Molean Russell Peet and James Monroe Russell were lawful great-grandchildren of Henry and Susan Eaton.

A careful review of the voluminous transcript has served only to satisfy us of the correctness of the judge's finding on the facts of the case. In any aspect, it could not be said that his ruling was manifestly erroneous. Accordingly, a detailed discussion of the testimony and appellees' criticisms thereof would be inutile.

This brings us to an examination of the important question of law presented for decision, i. e., whether appellant's claim is barred, under Article 1030 of the Civil Code, by the failure of Molean Russell Peet and James Monroe Russell to accept the successions of Susan and Henry Eaton within thirty years from their deaths. Initially, it must be determined that prescription has run for it is contended by appellant that it has not as the result of suspensions in its course occasioned by the minority of some of the heirs.

It has been established that Susan Eaton died in 1893, or prior thereto, as Henry Eaton contracted a second marriage on September 28, 1893. Henry died ten years later, in 1903. The petition of the Russell heirs, in which they formally accepted the successions of Henry and Susan, was not filed until January 19, 1949. Thus, at least 56 years elapsed after the death of Susan, and 46 years after Henry passed on, because the running of prescription commenced at the date of the death of each de cujus, see Tillery v. Fuller, 190 La. 586, 182 So. 683, and not, as counsel for appellant professes, from the time the successions were accepted in 1919 by appellees, or their transferors, as the surviving heirs. Accordingly, it would appear that, unless the running of prescription has been tolled, it has accrued.

Counsel for appellant does not take serious issue with regard to the accrual of prescription as to the succession of Susan Eaton [2] but he maintains that it had not

2. It is perfectly obvious that prescription had accrued as to the succession of Susan Eaton, despite any claims of suspensions or tacit acceptances of her succession by

run as to the succession of Henry Eaton because its course was suspended during the minority of James Monroe Russell and because the succession was in reality accepted in November of 1945, when James Monroe Russell entered into a contract of employment with D'Arnold Davis for the prosecution of this litigation on a contingent fee basis and further by a quitclaim deed in favor of Davis to the land involved which was executed also by Russell in 1945.

█ We find no merit in these contentions. The record shows that Henry Eaton died in 1903 and his grandson, Willie Eaton (Russell), son of Neal Eaton, became of age in the same year as he was born in 1882. Therefore, prescription began to run against him almost, if not, immediately upon the death of Henry Eaton. According to the facts found by the district judge, Willie Eaton (Russell) died in 1932 so that, at the time of his death, 29 years of the 30 year prescription had run. But the running of prescription was suspended at Willie Eaton's (Russell) death by reason of the minority of his heirs. It appears that he married Julia Washington in 1919 and that they had four children, the first of which was born out of wedlock. Therefore, it is evident that the

other three children were minors in 1932, when their father died. However prescription began again when they reached majority and accrued as to each within a year thereafter. The dates on which these children became of age has not been shown by appellant. He carried the burden of proving the period of their minority, it being settled that it is incumbent upon the party relying upon the interruption or suspension of prescription to establish the facts upon which the interruption or suspension is founded. Scott v. Dickson, 148 La. 967, 88 So. 235.

Under the findings of the district court, James Monroe Russell, the youngest of the four children of Willie Eaton (Russell) and Julia Washington was at least 20 years old in 1945, as he was born in 1925 or before. We say at least 20 years of age at that time; he may have been older as Davis, the appellant, testified that "he was twenty-one or better" when he executed the quitclaim deed on November 27, 1945, although he later recanted this statement and avouched that Russell was a minor at the time. Then, too, Russell may have been married in 1945 and, if so, prescription would have started to run against him anew from the date of the marriage. Suc-

---

contracts made in 1945. Susan Eaton died in 1893 and her son, Neal, in 1896 and Willie Eaton (Russell) attained majority in 1903. Accordingly, three years had run when Neal died and although prescription was suspended by Willie

Eaton's (Russell) minority, it began to run again in 1903, when he attained his majority and accrued twenty-seven years later, in 1930, two years before his death in 1932.

cession of Bonnette, 188 La. 297, 176 So. 397.

Manifestly, therefore, it cannot be said that appellant has carried the burden of establishing suspensions which tolled the accrual of prescription either before or during 1945. But, even if it be assumed that James Monroe Russell was an unemancipated minor in 1945, it does not help appellant because neither the contract employing him to prosecute this claim on a contingent fee basis nor the quitclaim deed executed in his favor constituted an express or tacit acceptance by Russell of the successions of his ancestors under the applicable articles of the Civil Code. See Article 988 et seq. There was no assumption of the quality as heir in the contract of employment; rather, it was merely a mandate revocable at will. And the quitclaim deed is not of greater import; Russell merely releases his rights in and to the land; he makes no claim of any right or title.

Accordingly, we find that Molean Russell Peet [3] and James Monroe Russell have permitted more than 30 years to elapse

without exercising the choice of accepting or renouncing the successions of Henry and Susan Eaton. Hence, their claims are prescribed under the interpretation given to Article 1030 by this court in the cases of Bendernagel v. Foret, 145 La. 115, 81 So. 869 and Tillery v. Fuller, 190 La. 586, 182 So. 683 inasmuch as the appellees herein, who are pleading prescription are either coheirs or transferees of coheirs of Molean Russell Peet and James Monroe Russell.

Counsel for appellant perforce concedes that, since appellees or their transferors have accepted the successions of Henry and Susan Eaton, the case falls squarely within the ruling of Tillery v. Fuller, supra. But counsel says that Tillery v. Fuller is directly opposed to the doctrine enunciated by the court in Generes v. Bowie Lumber Company, 143 La. 811, 79 So. 413; that it is based on faulty reasoning and should be overruled. Albeit, it is proclaimed that Tillery v. Fuller has not been followed by the court and that the pronouncements therein have been but recently rejected in Dileo v. Dileo, 217 La. 103, 46 So.2d 53.[4] These contentions present

3. A fortiori, everything we have said respecting the accrual of prescription against James Monroe Russell applies to Molean Russell Peet as she, admittedly, is older than her brother.

4. Counsel is mistaken in his contention that Dileo v. Dileo overruled Tillery v. Fuller. Indeed, that decision approvingly cites Tillery v. Fuller as authority for the proposition that forced heirs do not lose by prescription their right of inheritance as the law presumes that they have accepted the succession. Since the defendants in Dileo v. Dileo had not accepted the succession of their parents, the ruling in Generes v. Bowie Lumber Co., 143 La. 811, 79 So. 413, was applicable

serious questions which necessitate a re-examination of the jurisprudence interpreting Article 1030 of the Civil Code.

The Article, which is a replica of Article 789 of the Code Napoleon, is found in Section 2 of Chapter 6 of Title I, Book III, dealing with "Successions" and specifically of the manner in which they are accepted or renounced. It reads: "The faculty of accepting or renouncing a succession becomes barred by the lapse of time required for the longest prescription of the rights to immovables."

It is to be observed at the outset that the literal meaning of the Article is perfectly clear and presents no problem of interpretation, for it simply provides a bar, after thirty years, of the faculty of accepting or renouncing a succession, i. e., the right of election or choice to do one of two things. Yet, there is probably no other provision of our Code which has caused a greater diversity of opinion than this Article.

The first case involving an interpretation of the Article was Succession of Waters, 1857, 12 La.Ann. 97. There, the surviving father of a deceased child was claiming the child's share in the estate of her grandmother which had been accepted by the coheirs. He was met with a prescriptive plea under Article 1030. In sustaining the plea, the court stated that,

and the variation of the doctrine of the Generes case, which was developed in Til-

while it encountered no difficulty in enforcing the clear provisions relative to the necessity of acceptance by an heir within thirty years, the interpretation to be given to the entire article was most perplexing in view of the fact that the prescription purported to be a bar not only to the faculty of accepting but also to that of renouncing and that it was not easy to discover when the faculty of renunciation could be applied to an heir who had remained silent for more than thirty years. Indeed, the court frankly confessed its inability to solve the article, remarking that the French commentators, in interpreting its counterpart, Article 789 of the Code Napolean, had evolved no less than eight different theories out of it and it was concluded that it would be time enough to construe the portion of the Article dealing with renunciation whenever a case arose in which an explanation would be required.

The decision in Succession of Waters remained the law until 1918 when it was specifically overruled in Generes v. Bowie Lumber Co., supra. There, plaintiff, as sole heir of his mother and father, brought a petitory action against defendant, who was without title and virtually a trespasser, to recover two tracts of land formerly owned by the community existing between his parents. The defendant pleaded the prescription provided by Article 1030, as

lery v. Fuller, was of no consequence to the question presented for decision. ·

more than 30 years had elapsed between the date of the death of the father and plaintiff's formal acceptance of the succession. In holding that the plea of prescription was not tenable, the court announced an entirely new theory as to the meaning of Article 1030. It was declared that the Article provided for two faculties —that of accepting and that of renouncing; that it was obviously impossible for both of these faculties to prescribe at the end of 30 years and that, therefore, the faculty applicable in any given case must necessarily depend upon the status of the heir. It was pointed out that, under Articles 940, 941 and 1014 of the Civil Code, the legal heir succeeded to the inheritance immediately on the death of the de cujus; that the acquisition took place by operation of law and that he became siezed of the succession in right, whereas, no such seizin or presumptions existed in favor of an irregular heir. Buttressed by this premise, the court resolved that a forced or legal heir was not deprived of the faculty of accepting by the thirty years prescription as the succession was accepted for him by operation of law and that what he would stand to lose would be the faculty of renouncing. And, conversely, it was held that the irregular heir did not lose by prescription the faculty of renouncing but only the faculty of accepting because there was no presumption of acceptance existing in his favor.

The opinion in the Generes case was by a divided court, dissents being registered by Chief Justice Monroe and Justice Leche. In fact, it is apt to observe that only two members of the court subscribed to the views therein for, although it appears that Justice Provosty signed the opinion, he unquestionably entertained a different concept of Article 1030. This is shown by the opinion he authored on rehearing in Harang v. Golden Ranch Land & Drainage Co., 143 La. 982, 79 So. 768, 788, which was handed down on the same day (June 19, 1918) upon which a rehearing was denied in Generes v. Bowie Lumber Co. There, in construing the Article, Justice Provosty said: "* * * under the express terms of said article, what is barred by the prescription which it provides is not the right of an owner to recover his property, but, in the words of the article, 'the faculty of accepting a succession.' Between the two cases there is no analogy whatever. The heir has 30 years within which he may elect to accept, and thereby acquire the property. Pending this 30 years thus running against him the property is not in his possession, either actually or constructively, but in the possession of the representative of the succession; and this representative of the succession does not hold for himself, but for whichever heir may eventually accept the succession, * * *. The rationale of said article 1030 is that the public has an interest in not letting the ownership of property remain too long in uncertainty or suspense; and hence a time is fixed within which the heir must make up his

mind *whether to accept or renounce,* and thereby fix the ownership of the property." (Italics ours.)

Thus, the divergence of opinion is brought to light as the Generes case predicates the applicability of the prescription provided by Article 1030 wholly upon the status of the heir.

· A year later, in Bendernagel v. Foret, supra, the court was called on to reconsider the Generes case. In that matter, involving a similar state of facts (the defendant was without title to the land sought to be recovered), counsel for defendant assailed the Generes decision, stressing the validity of the reasoning in the dissenting opinion of Justice Leche, wherein he took the court to task for refusing to follow the theories evolved by the French commentators and particularly the view expounded by Fuzier-Herman (Vol. 2, p. 91, Nos. 17 and 22). The majority of the court, however, adhered to the basic principle of the Generes case. It declared that the quotation from Fuzier-Herman contained in the dissenting opinion relied on by counsel was not correct and that, accurately stated, Fuzier-Herman's opinion was that what the Article prescribed was "the hereditary right itself, consisting of the option between acceptance and renunciation * * *". [145 La. 115, 81 So. 873.] It was further asserted that Fuzier-Herman was of the view that the Article could be invoked against a forced or legal heir who has failed to ac-

cept within 30 years if his coheir has accepted the succession but not if the prescription is being pleaded by a mere trespasser or a possessor without title to the property claimed. The court then observes: "What the heir at law stands to lose by the prescription of 30 years (except, of course, as to his coheirs or heirs next in degree who have accepted) is the right to renounce the succession. Our ruling in Generes v. Bowie Lumber Co., in that respect, is consistent with the dissertation of Fuzier-Herman, Vol. 2, p. 91, particularly comment No. 22; and what was said on the subject in Harang v. Golden Ranch (on rehearing) is precisely in accord with the French author."

The foregoing quotation from Bendernagel v. Foret evidences a change by the court of its former position, insofar as concerns the obligation of a legal heir to accept the succession within 30 years, and yet uphold the reasoning upon which Generes v. Bowie Lumber Co. was founded. But an examination of that reasoning will readily evince that the tenet of the Generes case, that the legal heir is not required to formally accept the succession within the 30 year prescriptive period because the law presumes his acceptance, cannot be reconciled with the later pronouncement in Bendernagel v. Foret. Plainly, if the legal heir is not required to accept because the law presumes his acceptance, the action of his coheir should not be of importance in determining the applicability

of Article 1030, as the Article bars the heir for failing to exercise his choice within 30 years and is not in anywise dependent for its effectiveness and enforcement upon the acceptance of the coheir.

This is the basis of the complaint of counsel for appellant—that the decision in Tillery v. Fuller, which did no more than apply the reasoning of Bendernagel v. Foret, cannot withstand critical analysis. And it must be conceded that the rationale of the Generes case, upon which counsel relies, cannot logically support the view stated in Bendernagel v. Foret which was approved in Tillery v. Fuller. However, it does not necessarily follow that the conclusions reached in those cases or, for that matter, in Generes v. Bowie Lumber Co., are incorrect. On the contrary, after a careful view of the cases involving Article 1030, we are convinced that the result reached in each and every one of them is right. See, in addition to the Generes, Bendernagel and Tillery cases, Dew v. Hammett, 150 La. 1094, 91 So. 523; Succession of Waters, supra; Dileo v.

Dileo, supra; Succession of Tyson, 186 La. 516, 172 So. 772 and Barnsdall Oil Company v. Applegate, 218 La. 571, 50 So.2d 197.

It now occurs to us that, had the court given effect to Article 1030 as it is written, that is, that it bars the right of the heir to accept or renounce the succession after thirty years of inaction, a great deal of the difficulty which has been encountered would have been avoided.[5] The Article, placed as it is under the part of the Civil Code dealing with the acceptance and renunciation of successions, is a prescription and not a peremption and inures to the relief of the succession and its representatives and to the benefit of those heirs, who have accepted, from and against all claims of heirship after the 30 year period has accrued. For this reason alone, it seems manifest that a trespasser, or one holding land or other succession property without semblance of right or title, as in Generes v. Bowie Lumber Co., Bendernagel v. Foret, Dileo v. Dileo and Dew v. Hammett either by conveyances from the succession representatives or heirs or by an ac-

5. The perplexities of the court in ascertaining the meaning of Article 1030 (Saunders, in his Lectures on the Civil Code states, incorrectly we think, that the Article has no meaning at all), have stemmed from its inability to visualize cases in which the faculty of renunciation would be barred by prescription—because it may have seemed evident, in view of Articles 946 and 977 of the Civil Code, that inaction by the heir for thirty years would only affect loss of the right to accept. However, this may not be entirely true for—in cases where the succession representatives or coheirs have voluntarily recognized the inheritance of the heir, who fails to claim it—it might well be resolved that, if the heir permits thirty years to elapse without exercising the faculty of renunciation, he will be conclusively presumed to have accepted the succession.

quired prescription, cannot plead the prescription provided for in Article 1030 as the faculty lost by the heir, who fails to accept within thirty years, can only be availed of by the succession or those claiming through it as in Succession of Waters; Tillery v. Fuller; Succession of Tyson and Barnsdall Oil Company v. Applegate.

■ A reconsideration of the predicate of Generes v. Bowie Lumber Co. has convinced us that it is incorrect. While Articles 940, 941 and 1014 of the Civil Code provide that the legal heir inherits at the moment of the death of the de cujus by operation of law and that he is considered as heir, being seized of the succession in right, those Articles must be read in connection with Article 977, declaring that no one can be compelled to accept a succession in whatever manner it may have fallen to him and with the limitations expressed in the first paragraph of Article 946, which prescribes: "Though the succession be acquired by the heir from the moment of the death of the deceased, *his right is in suspense, until he decide whether he accepts or rejects it.*" (Italics ours.)

That Articles 946 and 977 are destructive of the theory upon which the ruling in Generes v. Bowie Lumber Co. is founded cannot be gainsaid. This is succinctly pointed out by Chief Justice Monroe in his concurring opinion in Schreiber v. Beer's Widow & Heirs, 150 La. 676, 91 So. 149, where he specifically directs the court's attention to the obvious conflict between the ruling in that case that formal acceptance is required by Article 946 and the rationale of the holdings in the Generes and Bendernagel cases.

■ We therefore conclude that the fact that the transferors of appellant were legal heirs of Henry and Susan Eaton did not exempt them from the provisions of Article 1030 of the Civil Code. Hence, inasmuch as prescription is pleaded by coheirs, or their tranferees, who have accepted the successions of their ancestors, the judge correctly concluded that the claim of appellant is barred.

As a final alternative, counsel for appellant urges that the case be remanded for the hearing of additional evidence on the question of the suspension of prescription. He represents that the issues relative to prescription were developed only at the end of the trial, which lasted five days, and that no opportunity was had to review the record and obtain other evidence touching upon the question of whether prescription had accrued. Under the facts of the case, we do not think that the plea is justified. It appears that, following the decision below, appellant timely applied for a new trial wherein he made a similar request that the judge reopen the case in order that he could produce more evidence touching upon the suspension of prescription. In denying the motion, the judge remarked: "The Plea of Prescription which was sustained against D'Arnold Davis, et. al., was filed in the proceedings .

prior to the close of the evidence and was at the time of filing referred to the merits, which ruling thereon was reserved by the Court. A similar Plea based on Article 1030 of the Civil Code had previously been filed by defendants D'Arnold Davis, et al. Both of said Pleas involved the birthdates of the children of Willie Russell. Ample opportunity therefore existed prior to the closing of the evidence for the presentation of D'Arnold Davis, et al., of the required evidence to show an interruption of the Pleas. There could not have been any surprise. Furthermore, the Motion is not supported with any affidavit that the required facts to show interruption could and would be presented." Thus it appears that appellant has had his day in court. He is not entitled to more than this.

The judgment appealed from is affirmed.

FOURNET, C. J., concurs in the decree.