Tracy L. SNIPES

v.

**PURE OIL COMPANY, Loffland Brothers Company, Third-Party Defendant.**

Civ. A. No. 7163.

United States District Court
W. D. Louisiana,
Opelousas Division.

Aug. 15, 1960.

Stewart & Mestayer, New Orleans, La., Edwards & Edwards, Crowley, La., Herbert W. Christenberry, Jr., New Orleans, La., for plaintiff.

Dubuisson & Dubuisson, Opelousas, La., for defendant.

Normann & Normann, New Orleans, La., for third party defendant.

HUNTER, District Judge.

Alleging that his serious, permanent, and disabling injuries resulted from the proximate negligence of defendant, plaintiff brings this maritime tort action on the civil side.

The case was tried and resulted in a verdict by the jury in favor of plaintiff for $75,000.

At the close of plaintiff's case, defendant filed a motion for a directed verdict. Defendant filed a similar motion at the close of all the evidence. These motions were denied and the case submitted to the jury. Subsequent to the verdict, defendant filed a timely motion to set aside the jury's verdict and to grant defendant a judgment notwithstanding same.

The substantive federal maritime law controls and the maritime rules with respect to comparative negligence, assumption of risk, proximate cause, burden of proof, etc., are applicable.[1]

The facts considered in the light most favorable to plaintiff are substantially these: The accident occurred on a stationary oil drilling platform owned by Pure Oil Company, which was located in the Gulf of Mexico off the Louisiana coast. Plaintiff was employed by Loffland Brothers Company as a member of a drilling crew in the capacity of a rough neck. The drilling job was governed by a contract between Pure and Loffland.[2] At the time of the accident, Loffland's drilling crew of which plaintiff was a member was preparing to "skid" the rig from a location where the drilling of a well had been completed to a new location. The platform was owned by Pure; the fuel tank was owned by Pure; the fresh water storage tank was owned by Pure; Pure furnished the fresh water. The tanks were located on the platform and were used in connection with drilling operations. The water tank was used to store fresh water which was needed to flood the hydraulic brake in the rig. The tank was connected with the rig by two pipelines, one of which ran along the floor of the platform from the bottom of the tank to the rig, and was called a "suction line", and the other was suspended above the platform of the rig to

1. Pope & Talbot, Inc. v. Hawn, 1953, 346 U.S. 406, 74 S.Ct. 202, 98 L.Ed. 143.

2. This contract was offered in evidence as a joint offering by plaintiff and defendant, presumably for the purpose of showing ownership and control of certain equipment.

the top of the water tank. During the course of operations the water circulated from the tank through the suction line into the rig, through the hydraulic brake, and by gravity was carried back through the line of pipe suspended above the platform floor from the rig to the water tank. The effect was a circulating system by which the water passed from the tank through the hydraulic brake in the rig and back to the tank through the return line suspended above the platform. This return line (or flow line), as plaintiff calls it, was composed of two joints of iron pipe which were connected together in the middle by a standard collar connection. The pipe was supported in the middle by a pole with a pedestal on the platform floor, at the top of which was a saddle in which the pipe rested. To move the rig from one location to a new location on the platform it was necessary to take down or discharge this overhead return line, sometimes called a discharge line, sometimes called a flow line. The plaintiff climbed the water tank by means of a ladder fastened to the side of the tank and went on top thereof for the purpose of lifting the nozzle which fitted into a hole in the middle of the top of the tank so that the end of the pipe could be slidden by his co-employees at its other end away from the derrick. As plaintiff lifted his end out of the hole on the top of the tank, the pipe broke at the middle of the two joints of pipe which had been connected by the collar. Then the long end of the pipe went down and the short one came up and gave plaintiff a little push off the top of the platform (Tr. 192). It was just enough push to unbalance him (Tr. 192), and he fell towards the platform floor and through a hole which had been left in the platform floor by Pure employees; his body struck portions of the substructure located below the platform floor, and he fell into the Gulf. Plaintiff was rescued by a boat belonging to Pure and was taken ashore. The Pure water tank from which plaintiff fell had no

rails or guards of any kind upon it. It was oval shaped and was about ten or twelve feet in diameter. The top of it was of smooth surface, slightly oval shaped; it was not a flat top, but was rounded on the top (Tr. 187). Defendant's own witness, Mr. Teacle, testified that it would not have been expensive to provide safety rails (Tr. 313).

### Judgment n. o. v.

The law applicable is well established and multiplying authorities would be superfluous. It may be summarized as follows: *The fact-finding power belongs to the jury. This power includes the determination of all questions of fact, and the drawing or rejection of inferences from facts. Both negligence and proximate cause are for the jury to find or reject, and the findings of the jury are not to be disturbed wherever they rest upon some evidence, or upon a reasonable inference or conclusion based upon some evidence. Neither conflicting evidence nor conflicting inferences are to be re-weighed or considered by the trial judge in testing the verdict. The sole question in testing the verdict is whether there is any evidence in the record, or any reasonable inference from any evidence in the record, which, if believed, would authorize a verdict against defendants.*

Defendant energetically and earnestly contends that there is no evidence of negligence on its part which proximately caused plaintiff's injuries.[3] We disagree.

Testing the evidence as we must, with all inferences most favorable to the jury verdict, we find that there was ample evidence which the jury could, and presumably did, credit to this effect:

(1) A proximate cause of the accident was the negligence of Pure in not equipping the oval shaped smooth surfaced water tank with railings or some sort of safety surface on top.

---

3. Plaintiff, with equal vigor, insists that the jury could not have reasonably returned any other verdict than the one they did return.

(2) Had the water tank been so equipped, plaintiff would not have fallen.

(3) The failure on the part of defendant to provide a safe place from which plaintiff could do the work required of him (dismantling the pipe) was a proximate cause of the accident (*see the description of the tank as contained in the transcript, page 59.*)

■ Because of our conclusions heretofore immediately set out, it is not necessary to decide whether a jury question was presented on the issue of the ownership of the pipe that broke. The only positive testimony relative the ownership of the pipe was that defendant's witness, Teacle, who stated categorically that the pipe belonged to Loffland (Tr. 301). This testimony could be accepted in whole or in part by the jury, or disbelieved in whole or in part. There was, in my opinion, ample evidence upon which the jury could have concluded that the connection that broke was in fact a flow line connection (Tr. 66, 68, 69, 78, 94, 347). Because this is true, plaintiff insists that it was equally within the province of the jury to find that the connection that broke belonged to Pure, because under the contract it was Pure's obligation to furnish flow line connections. And in addition, the plaintiff insists that all of the equipment at the particular time of this accident was under the contract controlled by Pure. We are neither agreeing nor disagreeing with these contentions, because it is not necessary for us to pass on them. However, we are inclined to believe that the inferences and deductions reasonably to be drawn from the close relationship between Pure and Loffland on this particular job made the issues of ownership and control of the pipe that broke a matter for the jury's determination.

The motions for directed verdicts and for judgment notwithstanding the verdict are denied.

### Motion for a New Trial

■ The Court appreciates the clear distinction between its power to which the trial judge concurred, trial by jury would then become an artificial formality. The question is not what I would have done had I been a member of the jury. The question is: Is the verdict clearly or decidedly against the weight of the evidence? I do not think so. I am not free to re-weigh the evidence and set aside the verdict and grant a new trial merely because I might feel that other results are more reasonable.

In exercising discretion and in reviewing the evidence, the Court has decided to abstain from interfering with the verdict, because the issues here involved are issues upon which reasonable minds might differ as to the conclusions to be drawn from the conflicting facts presented.

■ Nor do I see any merit in defendant's contention that the verdict is so excessive that a remittitur should be ordered. The verdict was high—the highest we have had in the Opelousas Division of this Court. The verdicts have been so uniformly low in that division that the size of it surprised the Court, but that is no proof of its excessivness.

The medical reports speak for themselves. Plaintiff's disabilities are permanent, and he will in all probability never be able to resume his occupation as a rough neck or do other laborious work requiring the full function and use set aside a verdict and grant a judgment notwithstanding same, and its power to grant a new trial. Marsh v. Illinois Central R. R. Co., 5 Cir., 1949, 175 F.2d 498; Aetna Casualty & Surety Co. v. Yeatts, 4 Cir., 1944, 122 F.2d 350, 351; Montgomery Ward & Co. v. Duncan, 1940, 311 U.S. 243, 61 S.Ct. 189, 85 L.Ed. 147. This authority to grant a new trial must be exercised cautiously, for if only those verdicts were to be undisturbed with of his upper extremities. He was 35 years of age at the time of the accident. He is married and has five (5) children (Tr. 218). He is a man of limited education and experience, a limitation severely circumscribing his job opportunities. His loss of earnings from the date of accident to the time of trial approach-

ed $20,000. He suffered intense pain. Considering all these factors, this Court is not prepared to say that the jury's verdict is so grossly excessive as to require a remittitur.

For reasons stated, the Clerk will enter forthwith an order denying defendant's motions.

Kerr, District Judge, dissented.