Ruffin T. LOWRY
v.
The ATLANTIC REFINING COMPANY.
Civ. A. No. 8975.

United States District Court
W. D. Louisiana,
Lafayette Division.
July 16, 1964.

Davidson, Meaux, Onebane & Donahoe, J. J. Davidson, Jr., and Lawrence E. Donohoe, Jr., Lafayette, La., for plaintiff.

Liskow & Lewis, Richard E. Gerard, Lake Charles, La., and William M. Hall, Jr., Lafayette, La., for defendant.

PUTNAM, District Judge.

Plaintiffs in this case are Ruffin T. Lowry, a resident of Lafayette, Louisiana, and his co-owners in a mineral lease affecting certain lands in St. Mary Parish, Louisiana, owned by the family of George J. LeBourgeois, now deceased. Suit is against Atlantic Refining Company, which also claims leasehold rights

on the property by virtue of a mineral lease held by it.

Originally filed in the Sixteenth Judicial District Court of Louisiana, the suit was removed by defendant. There is diversity of citizenship between the parties, and the property in question has an undisputed value in excess of $10,000.00, consequently the jurisdictional requirements are met.

One of the primary issues in the case involves the question of whether or not the heirs of Alcide A. LeBourgeois, a son of George J. LeBourgeois who predeceased his father, had, by their actions in dealing with their interests in the property, accepted the succession falling to them at his death purely, simply and unconditionally under the pertinent provisions of the Louisiana Civil Code. Because of the strong protestations of plaintiff in brief, defendant's motion for summary judgment was denied, and this issue was tried to a jury, on special verdicts pursuant to F.R.Civ.P., Rule 49(a), 28 U.S.C.A.

At the conclusion of the evidence, defendant moved for a directed verdict. This motion was denied by the Court, although it was felt to have considerable merit. The Court is of the opinion that in this situation the better practice is to allow the jury's findings to be made, since any error can be corrected on motion for judgment n. o. v. or for a new trial.

The jury found that the heirs had not accepted the succession of Alcide A. LeBourgeois. On the return of the special findings, the evidence was concluded, and the parties stipulated in open court that the delays for filing motions for judgment n. o. v. or for a new trial would not begin to run until after final judgment had been entered by the court.

The facts and the issues of law are complex, and exhaustive briefs were filed by both sides. Before the court had completed its study of the record and the law, defendant moved for judgment notwithstanding the special findings of the jury, in accord with its motion for directed verdict.

This motion was briefed and argued. We now proceed to a final decision of the issues.

### THE FACTS

From the stipulations of the parties and the testimony of the witnesses, the facts pertinent to this decision may be condensed as hereinafter set forth.

The lands involved consist of 160 acres in St. Mary Parish, Louisiana, title to which was originally vested in undivided proportions as follows: Mrs. Aimee Coudroy LeBourgeois, the first wife of George J. LeBourgeois, one-fourth (¼th.), Mrs. Viola Segura Coudroy, one fourth (¼th.), and Mrs. Septime R. LeBourgeois, second wife of George J. LeBourgeois, one-half (½).

At the time of the execution of the lease to Atlantic on May 4, 1955, the thirteen lessors named therein claimed title to the entire tract of 160 acres through inheritance from the four co-owners above named, or their descendants. The chain of title and correct proportionate ownership, by stipulation of the parties, is set forth in detail in letter dated March 28, 1958 from Mrs. Margaret Wooster, a prominent title attorney of this State practicing in Franklin, Louisiana, referred to in the pretrial stipulation, paragraph 2.

There was, however, an adverse claim to the western 80 acres of the property by Alphonsine Decuir and others, this claim being finally settled as we will discuss hereafter in this opinion.

Alcide A. LeBourgeois, one of four children of the marriage between George J. LeBourgeois and Aimee Coudroy, died on April 20, 1955 shortly before confection of the Atlantic lease. He was married to Marcie Geiling, who survived him, and who was made his universal legatee by last will. There were no children by this marriage, and Marcie would have taken all of his estate but for the fact that his father, George J. LeBourgeois, survived him and was a forced heir in his succession, entitled as such to share in the separate estate of his son, which included Alcide's interest in the land.

The one-fourth interest primarily owned by Mrs. Viola Segura Coudroy is not involved in this controversy so that the lessors, Ruby Annie C. Koch, Odette Mary C. Mason, Paul Adolph Coudroy, Thelma Margaret Coudroy, and Pearl Viola Coudroy Meyer, named in the lease are not concerned in this discussion.

Hereinafter we refer to Marcie Geiling LeBourgeois and to George J. LeBourgeois individually, and to the remaining children of George: Alcee J. LeBourgeois, Ernestine L. Navarro, Inez L. Seidel, Rose Aimee Duplantis, Aimee B. Parro and Cecile B. Wilson, simply as the LeBourgeois heirs.

Two children of Aimee C. LeBourgeois survived her, and died without issue, their interests passing to their father and their siblings under the Louisiana law of descent and distribution. They were Angelle and Rachon (Rachelle) LeBourgeois, referred to in the stipulation of facts. Their successions were never opened and no formal judgment of possession was ever entered in the records of St. Mary Parish. This was not necessary as the successions were intestate and the legal heirs were immediately seized of their respective inheritances.

A third child, Georgette, married and subsequently died leaving two daughters, Aimee B. Parro and Cecile B. Wilson, issue of her marriage to Herbert Barras. Their interests were inherited from their mother.

At the time of Alcide's death and the execution of the Atlantic lease, therefore, George J. LeBourgeois and the LeBourgeois heirs owned undivided interests in the property acquired through inheritance from Aimee C. LeBourgeois and Septime R. LeBourgeois, independent of the interest left by Alcide, but subject to the dispute with the Decuirs affecting the western 80 acres of this tract of land.

It was brought out at the trial that Atlantic held a lease on the land which was executed in 1950 by the following lessors, each claiming the interest shown opposite their respective names:

George J. LeBourgeois ........ 3.515%
Septime R. LeBourgeois ......50.000%
Alcide A. LeBourgeois ........10.742%
Aimee B. Parro ..............5.371%
Cecile B. Wilson ............ 5.371%
Coudroy Heirs ..............25.000%

Delay rentals paid under this lease were divided between the lessors in the proportions set forth. (As a matter of fact, however, these percentages were incorrect, but were accepted and generally believed to be correct by the lessors.)

Mrs. Septime R. LeBourgeois died after executing this lease, and Alcide A. LeBourgeois also died before expiration of the primary term of five years, which was about to expire at his death. Atlantic, then, was confronted with the necessity of obtaining a new lease from all of the owners and commenced negotiating with them almost immediately after Alcide's death.

As stated above, Alcide died on April 20, 1955. On April 25, Marcie Geiling petitioned the Seventeenth Judicial District Court of Lafourche Parish, Louisiana, for an order directing a search for a will. On April 27 the notary commissioned to make this search returned the will with his proces verbal to the Court, the will was duly probated, an inventory of Lafourche Parish property was ordered, and the Court further ordered that Marcie be appointed executrix as required by the testament and that letters issue to her accordingly, all on the same day. *Marcie did not qualify as executrix, however, until September 6 when she took the oath, and letters did not issue to her until September 15, 1955.*

We emphasize the lapse of time between the opening of Alcide's succession by his death on April 20, and the confirmation of Marcie Geiling as executrix on September 15, because it makes crystal clear the fact that when the lease to Atlantic was signed effective May 4, 1955, *there was no legal representative of the estate of Alcide A. LeBourgeois, other*

*than Marcie Geiling, in her capacity as widow and universal legatee, and George J. LeBourgeois, in his capacity as father and a forced heir of his deceased son.*

It is further established without contradiction that the fly sheet appended to the lease of May 4, 1955, purporting to be a rental division order, was affixed to the lease *after* its execution by the lessors, by a representative of Atlantic. This rental division order shows that the delay rentals provided for in the lease, due May 4, 1956, and annually thereafter during the primary term, were to be paid, in respect to Alcide A. and George J. LeBourgeois' interests, in the following percentages:

Marcie G. LeBourgeois ......10.742%
George J. LeBourgeois ........ 3.515%

which indicates that Marcie Geiling was to be paid for the whole of Alcide's interest and George was to be paid for the same interest he had in the property before Alcide's death. The fact that the original cash bonus paid for the lease was divided according to the same percentages is also undisputed. After execution of the Atlantic lease no cash delay rentals were ever paid as production was obtained. Royalties accruing were paid in the same proportions as above set forth, as hereinafter discussed.

The Atlantic lease was duly recorded in St. Mary Parish, Louisiana, on May 24, 1955, in Conveyance Book 9–B, page 389, under Entry No. 92333.

Marcie Geiling testified, and the record of the succession of Alcide LeBourgeois reflects, that her husband left no debts of consequence, and there were only assets remaining to be distributed in his succession.

After the death of Alcide and the execution of the Atlantic lease of May 4, 1955, the following occurred:

(a) George J. LeBourgeois declined to renounce the succession of Alcide, instead he manifested an unequivocal intention to accept the succession and claim his inheritance by letter written to his attorney, Mrs. Wooster, dated September 9th.

1955, in which he authorized her to collect what she could from the estate, followed by letters dated November 19th. and November 28th., 1955, respectively. (See globo exhibit P–17, offered at the trial.)

(b) George J. LeBourgeois died on December 16, 1955, his succession was accepted unconditionally and the LeBourgeois heirs were placed in possession of his property by Judgment of Possession dated August 24, 1956.

(c) Included in this estate was his claim as a forced heir of Alcide A. LeBourgeois, against Marcie Geiling.

(d) On January 20, 1956, Marcie Geiling and the LeBourgeois Heirs entered into a written agreement of compromise with the Decuir heirs, settling the adverse claims to the western 80 acres of the property in question. This compromise was effected by conveyances executed between the parties to this litigation and a partition of the lands, finally recorded in St. Mary Parish on June 7, 1956. (See Exhibit P–14 for entire proceedings in Suit No. 23,772, Sixteenth Judicial District Court, St. Mary Parish, Louisiana, and attached documents.)

(e) In these conveyances, Marcie acted as widow of Alcide A. LeBourgeois, rather than as executrix of his succession, and the LeBourgeois Heirs appeared and acted as heirs of George J. LeBourgeois as well as their other predeceased ancestors in this title.

(f) On June 5, 1956, the LeBourgeois Heirs filed suit No. 11903 in the 17th. Judicial District Court, Lafourche Parish, Louisiana, as heirs of George J. LeBourgeois against Marcie Geiling as universal legatee and executrix of the last will of Alcide A. LeBourgeois, for the reduction of the bequest made to her, as an infringement upon the legitime of their father, George J. LeBourgeois. They prayed to be recognized as owners of one-third of Alcide's estate. (See copies annexed to defendant's motion for summary judgment.)

(g) All proceedings in Succession of Alcide LeBourgeois, No. 5218, Probate

Docket, Seventeenth Judicial District Court, Lafourche Parish, Louisiana, had remained dormant after filing of the oath of Marcie Geiling as executrix on September 6th., and the issuance of letters to her on September 15th., 1955, until April 4th., 1957 when an inventory of the property left by Alcide in Lafourche Parish was filed.

(h) On February 15, 1962, the LeBourgeois Heirs filed a petition to remove Marcie as executrix of Alcide's estate. This matter was never tried, but a supplemental list of property showing the lands in St. Mary Parish, was filed by her on March 14, 1962, and at the same time she petitioned for authority to lease this property to F. L. Martin, assignee of plaintiff Lowry. This petition was approved, and the lease executed pursuant to a judgment of court dated March 27, 1962. Martin acted for Lowry in securing this lease.

(i) Marcie next filed a petition setting forth the terms of a compromise of the claims of the LeBourgeois Heirs against her, and seeking judicial approval thereof. All of these proceedings were purportedly in her capacity as executrix. The compromise was approved, and by agreement executed September 4th., 1962, the LeBourgeois Heirs were vested with a ¼th. interest in the property belonging to Alcide's separate estate and received an additional payment of $5,-500.00 cash. (See exhibit P–15.)

(j) When production was first obtained under Atlantic's lease in the fall of 1955, royalty payments were made on the disputed interest to Marcie Geiling as widow of Alcide A. LeBourgeois, the capacity in which she executed the lease. The remaining lessors were paid in the same proportion as is set out in the rental division order appended to the lease. On March 23, 1957, Mrs. Wooster, representing the LeBourgeois Heirs, advised Atlantic of the dispute with Marcie, called their attention to the error in the proportionate interests of all lessors and enclosed copies of the Judgment of Possession in the Succession of George J.

LeBourgeois. She also stated in this letter:

" * * * I presume that you will have to pay Mrs. Marcie Geiling LeBourgeois, Executrix of the Estate of Alcide A. LeBourgeois, the portion due that estate until you have been notified of final settlement." (See trial exhibit D–1.)

(k) After receipt of this letter, Atlantic made royalty payments to "Marcie Geiling LeBourgeois, Testamentary Executrix of the Estate of Alcide A. LeBourgeois". (See trial exhibits P–7, P–8, P–9, P–10, P–11 and P–12.)

(l) By various letters, the LeBourgeois Heirs made demand upon Atlantic for additional development of the leased property culminating in the drilling of an additional well on the lands, productive from three different sands. The well was started on September 17, 1961, was completed on February 14, 1962, at a total cost of $663,634.45, and it has produced oil, gas and other minerals having a total value of $149,135.33, up to November 4, 1963, when the pretrial stipulation was filed.

## THE LAW

The jury, after hearing the evidence, returned verdicts on special interrogatories addressed to them to the effect that (1) George J. LeBourgeois did not accept the Succession of Alcide A. LeBourgeois, (2) that Marcie Geiling did not accept this succession, and (3) that the LeBourgeois Heirs did not accept the succession of George J. LeBourgeois, and, in so doing, that of Alcide LeBourgeois.

## JUDGMENT n. o .v.

In our opinion, defendant's motion for judgment n. o. v. should be granted as a matter of law, the verdicts set aside and judgment on the merits entered for defendant as provided in F.R.C.P. Rules 49(a), and 58, 28 U.S.C.A., and in accordance with the stipulation of the parties made in open court at the conclusion of the trial.

Should this holding be deemed erroneous, then we feel that defendant should

be granted a new trial pursuant to F.R.C.P. Rule 59(d), 28 U.S.C.A., without the formality of filing a motion therefor as an alternative to the motion for judgment n. o. v.

In Audirsch v. Texas and Pacific Ry. Co., 195 F.2d 629 (5 Cir. 1952), the Court said:

"As this court has pointed out, a motion for a directed verdict or for a judgment notwithstanding the verdict can be granted only when there is no evidence which, if believed, would authorize a verdict against the movant, while the district judge may grant a new trial when he thinks the verdict is wrong, though supported by some evidence. Marsh v. Illinois Cent. R. Co., 5 Cir., 175 F.2d 498, 500."

In Snipes v. Pure Oil Co., 186 F.Supp. 373 (W.D.La.1960), Judge Edwin F. Hunter, Jr., of this court succinctly puts the question on the motion for judgment n. o. v. as follows:

"The sole question in testing the verdict is whether there is any evidence in the record, or any reasonable inference from any evidence in the record, which, if believed, would authorize a verdict against defendants." (186 F.Supp. 373, 375.)

If, then, in the course of our analysis of the problem confronting us it becomes necessary to conclude that the Succession of Alcide A. LeBourgeois was accepted by the lessors purely, simply and unconditionally, it must be upon the premise that none of the facts put before the jury bearing upon this question justify or authorize the contrary findings. Atlantic must demonstrate an all inclusive negative in order to prevail in its motion.

### NATURE OF THE SUIT

Plaintiffs seek to have their rights under the lease held by them recognized by defendant, and to receive that portion of revenue from production allocable to such lease in the Atlantic-J. LeBourgeois Unit No. 1 established by the Commissioner of Conservation of Louisiana. They allege that defendant is operating the unit, that the well was drilled by it, and that it is in charge of all phases of the operation. From the petition and prayer for relief, we conclude that plaintiffs' suit is a petitory action by them claiming ownership of a real right in the possession of another, as provided for in LSA–C.C.P. Arts. 3651, 3652 and 3653, 3660 and 3664, and LSA–R.S. 9:1105.

Article 3653, respecting the burden of proof in such cases, provides:

"To obtain a judgment recognizing his ownership of the immovable property or *real right,* the plaintiff in a petitory action shall:

"(1) Makes out his title thereto, if the court finds that the defendant is in possession thereof; or

"(2) Prove a better title thereto than the defendant, if the court finds that the latter is not in possession thereof."

We do not think that the facts reflected above can be construed in any other light but that the lease rights, which are denominated as and enjoy the status of real rights under LSA–R.S. 9:1105, C.C.P. Arts. 3664 and 3660, for procedural purposes, are in the possession of defendant Atlantic for purposes of suit.

We do not decide the question of the nature of the substantive rights conferred upon the mineral lessee, by holding that exercise of the lease carries with it possession, as that term is defined in LSA–C.C.P. Art. 3660, of the fugacious minerals beneath the surface of the land. Decision of this question here is entirely unnecessary, and in view of the repeated pronouncements of the Louisiana Supreme Court to the effect that the mineral lease is not either factually or in law a real right, such a conclusion would be of dubious validity. See, Reagan v. Murphy, 235 La. 529, 105 So.2d 210 (1958); Calhoun v. Gulf Refining Co., 235 La. 494, 104 So.2d 547 (1958); Harwood Oil & Mining Co. v. Black, 240 La. 641, 124 So.2d 764 (1960); Tinsley v. Seismic Explorations, Inc., 239 La. 23, 117 So.2d

897 (1960); Hayes v. Muller, 245 La. 356, 158 So.2d 191 (1963); Little v. Haik, 246 La. 121, 163 So.2d 558 (May 4, 1964), holding that LSA–R.S. 9:1105 does not affect the nature of the right conferred by such contracts in the area of substantive rights flowing therefrom, but merely classifies these substantive rights as real rights for procedural purposes. For excellent discussions of this problem see Yiannopoulos, Real Rights in Louisiana, etc., 23 La.Law Review 161, pp. 191 et seq.; and Whittmann, Louisiana Mineral Lease as a Contract Creating Real Rights, 35 T.L.R. 218, pp. 226, et seq.

■ For procedural purposes, however, the addition of LSA–C.C.P. Art. 3664 to our statutes on the subject, leaves no doubt but what the petitory action may now be asserted by a mineral lessee out of possession against one exercising the lease and reducing the minerals to possession by production from the leased premises. McKee v. Eskrigge, 139 So.2d 545, (4 Cir. La.App.1962).

■ The burden of proving the prevailing title, therefore, rests on plaintiffs here just as it would in the state courts had it not been removed. 28 U.S.C.A. § 1652.

## PLAINTIFFS' TITLE

Plaintiffs rely exclusively on the lease executed by Marcie Geiling as Executrix of the Succession of Alcide A. LeBourgeois, on March 27, 1962. Authority for the lease was granted by the court in Alcide's succession proceedings by following the procedure outlined in LSA–R.S. 9:1491 et seq., as amended, the source of which is Act No. 110 of the Legislature of Louisiana for the year 1948. This act filled a void in the law of the state by permitting the succession representative, when the estate was under administration and had not been accepted by the heirs, to grant mineral leases and receive the revenue therefrom for the benefit of the succession, without requiring the joinder or consent of the heirs, creditors or legatees. Prior thereto the application to lease could be made by the heirs and certain creditors in addition to the succession representative.[1] The law requires for application of its provisions that there be a succession under administration, which brings us directly to defendant's main grounds of attack on plaintiffs' title.

## THE QUESTION OF ACCEPTANCE

■ In Louisiana a succession is opened immediately upon the death of the de cujus, or its presumption from certain circumstances, LSA–C.C. Art. 934. Under the theory of "le mort saisit le vif." the heir succeeds instantly to the rights of the deceased at the moment of death and is vested with seisin of the estate. LSA–C.C. Art. 940 provides:

"Art. 940. A succession is acquired by the legal heir, who is called by law to the inheritance, immediately after the death of the deceased person to whom he succeeds. *This rule applies also to testamentary heirs, to instituted heirs and universal legatees, but not to particular legatees.*"
(Emphasis supplied)

Two important effects of this doctrine are that it transmits the property to the heirs of the deceased immediately, even though they are ignorant of the fact that the succession was opened in their favor, and it empowers the heirs to bring all actions and exercise all the rights of the deceased in respect to the property left by him. LSA–C.C. Art. 915 extends this doctrine to the surviving spouse in respect to the community property, even in intestate successions.

■ Thus, when Alcide died, Marcie Geiling as his surviving spouse and also as universal legatee under his last will, and George J. LeBourgeois as his father and forced heir, were immediately seized of the property left by him and were vested with full authority to exercise all of his rights in respect thereto without the necessity of any formal administration of his succession, subject only to their re-

1. Act 129 of 1936.

spective rights to accept it unconditionally, accept with benefit of inventory, or renounce it entirely. LSA–C.C. Arts. 977, 1032.

■ Although LSA–C.C. Art. 1014 provides that because of the seisin which takes place of right the heirs and universal legatees are considered as heir as long as they do not renounce the succession, this right of seisin is held in suspense until the election to accept or renounce is made, and they cannot be presumed liable for the debts of the succession merely because they do not formally renounce. Sun Oil Company v. Tarver, 219 La. 103, 52 So.2d 437 (1951).

Defendants argue that the execution of the mineral lease to Atlantic on May 4, 1955 was an unconditional acceptance of the succession of Alcide by Marcie Geiling and George J. LeBourgeois, hence the seisin was made complete and there was thereafter no succession in the fictional sense of the word in existence for the court to administer. All that remained to be done was to execute the will by delivery of the property in accordance with their respective ownerships, Marcie as universal legatee and George as a forced heir of his son.

At that time there were no debts against the estate, it was completely solvent. The will had been found, it had been probated and ordered registered. While Marcie was named as testamentary executrix with seisin of the property, she had not qualified as such. George LeBourgeois knew he would inherit from his son, as he had previously inherited from two of his other children. These two parties also knew that Atlantic had a lease on the property which was expiring and that it wanted a new lease on all of the interests covered in its original lease, this being the only reasonable inference that can be drawn from the facts found to exist here. Knowing this, they, along with all of the remaining lessors, proceeded to execute Atlantic's lease in their individual capacities and without any limitation placed on the interest leased.

An examination of the contract under discussion reveals that Marcie appeared therein as "widow by first and only marriage to Alcide A. LeBourgeois", and that George also appeared simply in his individual capacity. They then proceeded to lease "All Lessors' right, title and interest in and to:" the property in question.

LSA–C.C. Arts. 988 and 999, dealing with the manner in which successions may be accepted states:

"Art. 988. The simple acceptance may be either express or tacit.

"It is express, when the heir assumes the quality of heir in an unqualified manner, in some authentic or private instrument, or in some judicial proceeding.

"It is tacit, when some act is done by the heir, which necessarily supposes his intention to accept, *and which he would have no right to do but in his quality of heir.*" (Emphasis supplied)

"Art. 999. Though it may be necessary to sell some of the effects of a succession to prevent loss or waste, the sale of the least article of property belonging to the succession will render the person called to the succession irrevocably the heir, unless he cause himself to be authorized by the judge to make this sale at public auction, on a petition in which he shall allege the necessity there is for making it, and shall protest that he does not mean by this act to do an act that would make him liable as heir."

Thus defendant, in taking its lease from all of the possible heirs and legatees of Alcide A. LeBourgeois covering all of their rights, title and interest in the property, intended to and did include all of Alcide's interest, and the lessors Marcie Geiling and George LeBourgeois in executing this lease, intended to and did include such interest therein. Indeed, Marcie had no other interest at all in this property than that left by her husband.

In Foster v. Spann, 170 La. 1019, 129 So. 622 (1930), speaking of the effect of the execution of an oil, gas and mineral lease of succession property by the heirs, it was said:

"The lands leased by plaintiffs were received by Mrs. Nancy Holdiness, their mother, in the act of partition with Mrs. Elizabeth Lusk. Plaintiffs received for this lease the sum of $1,400 cash. This was beyond question a tacit and unconditional acceptance of their mother's succession. Rev.Civ.Code, arts. 988, 992, 994, 999, 1002.

"Besides, by filing this suit as the heirs of Nancy Holdiness, plaintiffs have unconditionally accepted her succession."

In Gueno v. Medlenka, 238 La. 1081, 117 So.2d 817 (1960), in denying the right to execute mineral leases to a usufructuary of real estate, the Supreme Court held that the exercise of the rights conferred by such contracts must necessarily alter the substance of the property affected, and concluded that the right to grant leases was one reserved to the naked owners of the property involved there.

The right to alter the substance of real estate in any particular is one of the incidents of ownership, and constitutes a disposition of interests in the land that can only be made in the proprietary capacity of owner, in the absence of special statutory authority conferring it elsewhere.

■ We hold that the execution of the lease to Atlantic by Marcie Geiling and George J. LeBourgeois was an act of ownership exercised by them over the property left by Alcide A. LeBourgeois, and constituted a simple and unconditional acceptance of his succession. LSA–C.C. Arts. 940, 988 and 999, supra, Foster v. Spann, supra.

■ Since the election of the heir and universal legatee to accept the succession relates back to the moment of death of the de cujus, LSA–C.C. Art. 1014, Sun Oil Co. v. Tarver, supra, the seisin of these parties was perfected and the concept of the succession of Alcide A. LeBourgeois as a separate entity apart from the heirs and legatees immediately terminated. Brashear v. Conner, 29 La. Ann. 347 (1877); Succ. of Thibodeaux, 38 La.Ann. 716 (1886); Scott v. Briscoe, 36 La.Ann. 278 (1884), relied upon by defendant, are all cases supporting the general proposition stated above; in addition, the rule has been recognized in the new Louisiana Code of Civil Procedure, LSA–C.C.P. Arts. 3001 et seq., and Arts. 3031 et seq., by expressly providing for judgments of possession without administration in testate as well as intestate successions, where the heirs and legatees accept and the estate is relatively free of debt.

Atlantic, in taking its lease, acquired all of the leasehold interest of the lessors named therein from whatever source derived, and is not affected by any disputes between the heirs and legatees as to the proportion of their respective ownerships.

■■ It is now settled that parole evidence may not be received to vary or alter the terms of a mineral lease in Louisiana. LSA–R.S. 9:1105, Hayes et al v. Muller, 245 La. 356, 158 So.2d 191 (1963); Little v. Haik, 246 La. 121, 163 So.2d 558 (May, 1964). When plaintiffs sought to introduce the testimony of the LeBourgeois Heirs as to the circumstances surrounding execution of the Atlantic lease on or about May 4, 1955, it was permitted for the limited purpose of showing facts that might have demonstrated an intention on the part of George J. LeBourgeois not to accept the succession of Alcide when he executed the lease. Defendant made timely and proper objection to this procedure.

The only witness called who was present when George executed the document was Mrs. Inez Seidel, whose testimony was to the effect that on that occasion there was no mention made of Alcide's interest in the property.

Southwest Gas Producing Co. v. Hattie Brothers, 230 La. 339, 88 So.2d 649

(1956), is directly in point and is decisive of all of the issues in this case. There the contestants were brought into court by concursus to determine ownership and rights to participate in royalty payments by the lessee of an oil and gas lease. The appellants were the heirs of W. C. Brothers, who claimed an undivided one-half interest in the royalties from tract "B" of the lease through inheritance from their father. At various times each of these heirs had signed mineral deeds conveying:

"All of his right, title and interest in and to * * *

(followed by description of property) * * *

It being the intention of vendor to sell all of his interest in and to the minerals in and under the lands belonging to the estate of Andrew M. Brothers and Martha Jane Brothers, in Sections 11 and 14, Twp. 19 North, Range 2 West."

The appellants contended, as do plaintiffs here, that this description did not convey the mineral rights in the one-half interest inherited from W. C. Brothers, who had been a co-owner in indivision of the land with A. M. Brothers.

Disposing of this contention, the court said:

"Appellants cannot be heard to say that they did not intend to sell the herein disputed undivided ½ mineral interest in Tract B, for the obvious reason that at the time of the sales they were completely unaware of the undivided ½ interest therein of their deceased father but believed their grandparents owned the whole of said tract.

"In each deed the respective appellants conveyed '*all of his interest* in and to the oil, gas and other minerals' that may be produced from, besides other properties, Tract B. Albeit, hindsight cannot be now urged to recant or impugn their intentions made evident by the clear and unambiguous declarations in said deeds.

"We find no ambiguity in the description of the property conveyed in the mineral deeds which clearly and specifically describe the tract of land herein involved. Furthermore each of these deeds clearly and unequivocally recites that the vendor therein does grant, bargain, sell, convey and deliver all of his right, title and interest in and to the oil, gas and other minerals, in and under that may be produced from the land described in said deed, including and specifically naming Tract B." (Emphasis by the Court.)

If it was the intention of George J. LeBourgeois to exclude the interest inherited by him from Alcide, it was incumbent upon him to do so. Instead he leased, with his co-owners, "All Lessors' right, title and interest in and to:" the property involved in this suit. See also: Rock Island A. & L. R. Co. v. Guillory, 205 La. 154, 17 So.2d 17 (1944); Armstrong v. Bates, 61 So.2d 466 (La.App. 1952).

■ The Atlantic lease was duly placed of record, long before the lease under which plaintiff claim. This was notice to the world that the land had been leased, and there was no interest remaining in Marcie Geiling or George J. LeBourgeois, or the Succession of Alcide A. LeBourgeois for that matter, left open to them. LSA-C.C. Arts. 2251 through 2266, McDuffie v. Walker, 125 La. 152, 51 So. 100 (1910).

■ Plaintiffs' argument that there was no recorded evidence of any transfer of interest from Alcide to Marcie Geiling and George J. LeBourgeois, hence they were not put on notice by recordation of Atlantic's lease in St. Mary Parish, is completely untenable. The inflexible recordation rule, as it has so often been called, announced in McDuffie v. Walker, supra, has no application to and cannot defeat the rights of heirs, even though evidence of such ownership is not placed of record. Long v. Chailan, 187 La. 507, 175 So. 42 (1937); Dugas v. Powell, 207 La. 316, 21 So.2d 366 (1945); Bishop v.

Copeland, 222 La. 284, 62 So.2d 486 (1953); Vaughan v. Housing Authority, 80 So.2d 561 (La.App.1955).

Defendant, having acquired all of the rights of those heirs to lease the property for mineral development, holds the primary title to such interest, subject only to any claims of creditors of the succession of Alcide A. LeBourgeois. We have seen that there were no such creditors.

Ignoring this decisive conclusion, and taking the view most favorable to plaintiffs, they cannot prevail.

■ Under the plain provisions of LSA–C.C. Art. 999, supra, when they conveyed a portion of the lands in question, along with Marcie Geiling LeBourgeois acting as "all of the heirs of George J. LeBourgeois and Alcide A. LeBourgeois", to the Decuirs on June 7th, 1956, they unequivocally and "irrevocably" accepted the succession of their father and their brother. From that moment on, in the absence of creditors to object to this procedure, the successions were terminated and their ownership was completely perfected. Further proceedings in the succession by the "executrix" were limited to recognizing this possession and ownership, a mere formality, and the proceeding to lease to Martin under LSA–R.S. 9:1491 was null, as the court no longer had jurisdiction rationae materiae. LSA–C.C. Arts. 940, 994, 988, 999, 1014, Brashear v. Conner, supra, Succession of Thibodeaux, 38 La.Ann. 716 (1886); Scott v. Briscoe, 36 La.Ann. 278 (1884); Buillard v. Davis, 185 La. 255, 169 So. 78 (1936); Kelley v. Kelley, 198 La. 338, 3 So.2d 641 (1941). Plaintiffs cannot even recover on the strength of their own title.

Counsel for plaintiffs have worked untiringly in presenting their case. Their briefs are exhaustive. They cover every decision of the appellate courts of this state that might conceivably be construed in favor of their position, dealing with the acceptance and administration of successions. The court has spent many hours reading and studying these au-thorities, and has reached the conclusion that they are inapposite.

Without citing and making particular reference to these cases, suffice it to say that the distinguishing features of this case, not found in those cited by plaintiffs, are (1) there was no demand for an administration of Alcide's succession by creditors, as there were none; and (2) there were only assets remaining to Marcie and George. There is no earthly reason shown by this evidence why these parties, Marcie and George or the LeBourgeois Heirs, after the death of the latter, should not have accepted the estate as they did.

■ The reduction of the bequest made to Marcie Geiling in the will of Alcide LeBourgeois did not constitute a claim against the estate. The reduction of that bequest could be demanded only by the forced heir, George, or his legal representatives, and against the legatee. LSA–C.C. Arts. 1594 et seq.

We cannot refrain from remarking that this case is not a suit to reform the Atlantic lease, nor is it a contest between the lessors therein and the lessee. Instead, it appears that the lessors remaining alive at this time have aligned themselves with plaintiffs and are now seeking to avoid the effects of their ancestors' actions in an effort to capitalize on an additional cash bonus and an increased royalty payment as provided for in the Lowry lease. They cannot, on these grounds, repudiate this contract.

PLEA OF ESTOPPEL

What we have said in the course of this opinion makes it clear that we consider the plea of estoppel filed by defendant at the close of the evidence, to be good.

For the foregoing reasons a decree will be settled in favor of defendant granting the motion for judgment n. o. v. reversing the findings of the jury in this case, holding that, on these issues the successions had, in each instance, been accepted by the heirs named in the interrogatory propounded.

Alternatively, the court on its own motion and pursuant to Rule 59(d), 28 U.S.

C.A., F.R.Civ.P., orders that a new trial on these issues be granted.

Further judgment on the merits in favor of defendant and against plaintiffs, in keeping with the prayer of defendant's answers, will be entered.

Formal decree in keeping with these views will be prepared and presented for signature by the attorneys for defendant.