427 So.2d 486 (1983)
The BANK OF NEW ORLEANS AND TRUST COMPANY
v.
H.P.B., JR. DEVELOPMENT COMPANY, INC. et al.
No. 5-282.
Court of Appeal of Louisiana, Fifth Circuit.
January 10, 1983.
On Rehearing March 7, 1983.
Rehearing Denied March 17, 1983.
*488 John M. Mamoulides, Mamoulides & Hoepffner, Metairie, David H. Schaub, Vice-President and Counsel, The Bank of New Orleans and Trust Co., Walter C. Thompson, Jr., Sessions, Fishman, Rosenson, Boisfontaine & Nathan, New Orleans, for plaintiff-appellee.
J. Barry Mouton, Lafayette, for defendant-appellant.
Before BOWES, CURRAULT and GRISBAUM, JJ.
CURRAULT, Judge.
This appeal originates in the Twenty-Fourth Judicial District Court, Division "M", wherein the Honorable Judge Robert J. Burns rendered judgment on a note in favor of plaintiff, the Bank of New Orleans and Trust Company, and against defendant, Carlos J. Marcello, in the full sum of One Million, Seven Hundred Eighty Thousand, One Hundred Twenty Dollars ($1,780,120), together with interest, attorney's fees and costs, and further rendering judgment in favor of plaintiff, the Bank of New Orleans and Trust Company, recognizing, maintaining and enforcing its mortgage, lien, and privilege rights under the collateral mortgage of defendant, H.P.B. Jr. Development Co., Inc., a/k/a H.P.B. Jr. Development Corporation. We affirm.
Plaintiff, the Bank of New Orleans and Trust Company (BNO) instituted this action for collection of the $1,780,120 balance due on a One Million, Eight Hundred Thousand Dollar ($1,800,000) loan made to defendant, Carlos J. Marcello (Marcello), and for recognition and enforcement via ordinaria of the collateral mortgage given by defendant, H.P.B. Jr. Development Co., Inc. (H.P.B.) to secure the loan. Defendants Marcello and H.P.B. filed a dilatory exception of prematurity, and as shown by the judgment dated June 30, 1981, the trial court ruled that the exception of prematurity properly constituted an affirmative defense, and that it should be heard in conjunction with the merits.
As a result of the trial court so ruling, defendants sought supervisory writs arguing that the suit had been filed prior to the date of maturity shown on the face of the note, and additionally that an extension of five years beyond the facial maturity date had been orally agreed to. The Fourth Circuit Court of Appeal denied writs by order dated August 21, 1981. Subsequently, on September 4, 1981, the Louisiana Supreme Court granted a supervisory writ and ordered that the dilatory exception of prematurity be tried and decided in advance of the trial on the merits.
The exception of prematurity was then tried and overruled by the trial court on September 9, 1981, in advance of the trial on the merits. The case thereupon proceeded to trial on the merits and, at the conclusion of the trial, the court rendered judgment in favor of plaintiff BNO and against defendants.
Defendants have perfected this appeal and we find the issues to be as follows:
I. Whether or not the trial court erred in overruling the exception of prematurity based on the evidence presented;
II. Whether or not the trial court erred in prohibiting the introduction of parol evidence allegedly establishing there was an oral agreement to extend the promissory note an additional five years; and
III. Whether or not the trial court erred in failing to allow defendant Marcello a credit for $300,000 because of an alleged misapplication of part of the proceeds of the $1.8 million loan.

I. EXCEPTION OF PREMATURITY
Appellant Marcello was the maker of a $1.8 million promissory note which was executed on February 3, 1976 in favor of appellee BNO. To secure the Marcello note, a *489 collateral mortgage note was pledged and assigned to BNO by appellant H.P.B. dated February 3, 1976, and paraphed for identification with a mortgage which was duly recorded in the public records of Jefferson Parish, Louisiana.
The hand note (Marcello note) was for a five-year term and, on its face, matured on February 3, 1981. BNO's suit was filed after the close of banking business on February 2, 1981. Appellants, citing pertinent codal authority[1], urged strongly that BNO's action was in fact premature on its face and that the litigation was not yet ripe for adjudication, thus entitling appellants to have the action dismissed.
BNO argues, however, that their suit was mature in that the security behind Marcello's note had become impaired and, as a result of Marcello's failure to provide additional security, his note became due. It is BNO's contention that Marcello's failure to have the collateral mortgage note acknowledged activated the acceleration clause of the hand note, thus maturing it.
It is evident from the record that a meeting was held on Friday, January 30, 1981. Mr. John Lewis, Senior Executive Vice-President, Bank of New Orleans; Mr. Lawrence A. Merrigan, President, Bank of New Orleans; Mr. Carlos Marcello; and Mr. David Levy, Attorney and House Counsel for Mr. Marcello, were all present at this meeting. Marcello and Levy were informed of certain impairments confronting H.P.B.'s collateral mortgage note. The primary concern of BNO, the pending impairment, was the five-year prescription of the collateral mortgage note (Ne varietur note). BNO expressed the need to have the collateral mortgage note acknowledged to interrupt prescription running against it and gave Marcello and Levy forms of resolution authorizing the acknowledgment. Marcello and Levy were also informed that the deadline to have the collateral mortgage note acknowledged would be the following Monday, February 2, 1981, which was also the day before the hand note would mature and the collateral mortgage note would prescribe.
The BNO officials testified they felt they had appellant's complete cooperation in having the collateral mortgage note acknowledged, however, it was also their belief that Marcello firmly refused to honor the hand note upon maturity because of a dispute between BNO and Marcello regarding an oral agreement extending the hand note an additional five years. Because of the approaching maturity date and their meeting with Marcello, the BNO official met again the following day, Saturday, January 31, 1981, with their house counsel. As a result of that meeting, BNO issued a demand letter to Marcello.
Pursuant to the terms of the hand note, BNO notified Marcello by a demand letter dated January 31, 1981, that the collateral securing the loan had become impaired and thus declined in value. Accordingly, BNO made formal demand on Marcello to furnish and pledge additional securities to cover the impairment requiring such compliance by Marcello to take place within 24 hours. The letter concluded that failure to comply would mature the note without any further demand, notice, or putting in default.
The "ne varietur" note can prescribe and, being a demand note, will do so in five years unless the mortgagor signs a written acknowledgment on the "ne varietur " note within five years after execution of the note. To prevent the "ne varietur" note from becoming prescribed, it is necessary to repeat the acknowledgment within five-year periods; otherwise, upon prescription of the "ne varietur" note (collateral mortgage note), there remains no outstanding mortgage against the subject property. Consequently, the mortgage pledged to secure the hand note is lost and the hand note becomes the purely personal obligation of its maker.[2]
*490 We are of the opinion that BNO established at trial that it had validly accelerated the facial maturity date of the note, in accordance with the acceleration clause therein, by delivering notice to Marcello based on the impairment of the collateral and the failure to receive acknowledgment. Therefore, having sufficient evidence establishing that BNO had validly accelerated the maturity date of the hand note, we find the trial court was correct in overruling defendant's exception of prematurity.
However, appellants argue that there was no impairment on the security in that Marcello made interest payments and at least one principal payment on the hand note. Appellants assert that these payments interrupted prescription against the collateral mortgage note. Appellants support their argument by citing LSA-R.S. 9:5807[3].
The effect of that statute in the collateral mortgage context is that a debtor's payment of principal or interest on the hand note operates to interrupt five-year prescription not only on that note, but also on the collateral mortgage note pledged by him "or his codebtors in solido" to secure the hand note. In this case, the collateral mortgage note was a demand note, and thus susceptible to five-year prescription in the absence of interruption. Marcello, as the debtor on the hand note, did in fact pay interest on that note, and H.P.B.'s collateral mortgage note was in fact pledged behind Marcello's hand note. Nevertheless, the collateral mortgage note was not a note pledged by the debtor Marcello or "his codebtors in solido" within the technical wording of the statute, since the pledge was by H.P.B., and H.P.B. was not a codebtor in solido with Marcello. H.P.B. executed the back of the hand note only to effectuate the pledge of the collateral mortgage note secured by the collateral mortgage, as recited, and H.P.B. did not execute or endorse as a co-maker or solidary surety. In other words, H.P.B.'s mortgage was in rem and it had no in personam liability to BNO.
We find that Marcello's failure to furnish and pledge additional securities to cover the impairment of the hand note, i.e., failure to acknowledge the collateral mortgage note, undisputedly accelerated the maturity date of that note thus making it due when BNO filed suit. We conclude that the trial judge was correct in overruling the exception of prematurity.

II. PAROL EVIDENCE
The appellants urge that they should have been given the opportunity to introduce evidence to demonstrate that the hand note had not yet accrued in that the obligation depended upon a suspensive condition (an agreement to extend) and the right to enforce did not accrue until the occurrence or performance of the condition. It is appellant's contention that at the time the hand note was executed, the parties had an oral agreement that the hand note would be extended an additional five years, at the option of the maker, on the identical terms and conditions set forth in the original note, and that the note would not be due until February 3, 1986. There is nothing contained in the record that demonstrates that this extension agreement was ever reduced to writing such as a written commitment by the bank and executed for a fee, guaranteeing that extension.
The trial judge disallowed any parol evidence against or beyond what was contained in the note or what may have been said before or at the time of the making of the note. The trial judge based his ruling on edicts of our Supreme court and codal provisions. He further added that in construing *491 a contract, the intent is to be determined by the words of the contract when these are clear and explicit and lead to no absurd consequences. The trial judge clearly indicated that he felt he could not go beyond the written legal documents before him and therefore ruled inadmissible all parol evidence.
On parol evidence, our Supreme court has stated in White v. Rimmer & Garrett, Inc., 340 So.2d 283, 285-86 (La.1976):
"Generally parol evidence may not be admitted `against or beyond what is contained in the acts, nor what may have been said before, or at the time of making them, or since.' C.C. 2276. In addition, the code provides that in construing a contract `the intent is to be determined by the words of the contract, when these are clear and explicit and lead to no absurd consequences.' C.C. 1945(3). Furthermore, `when there is doubt as to the true sense of the words of a contract, they may be explained by referring to other words or phrases used in making the same contract.' C.C. 1948. However, it is also provided that `when the intent of the parties is doubtful, the construction put upon it, by the manner in which it has been executed by both, or by one with the express or implied assent of the other, furnishes a rule for its interpretation. C.C. 1956. Thus, unless the true intent of the parties can not be ascertained by an analysis of the contract provisions because these terms are ambiguous, parol evidence is not admissible. To hold otherwise and allow parol to explain that an unambiguous phrase means something other than its clear meaning would allow parol `against or beyond' what is contained in the contract." (Emphasis added)
We find the hand note to be clear and unambiguous and the intent of the parties appears with the utmost of clarity. We conclude, therefore, that the trial judge was correct in holding the parol evidence sought to be entered by appellant inadmissible in this case.
Appellants additionally argue the cross-examination testimony of Beauregard A. Redmond amounted to a judicial confession that BNO had an agreement with Marcello that Marcello would get an automatic five-year extension of the loan. After giving due consideration to the testimony contained in the record, we believe appellants' interpretation of Mr. Redmond's testimony is wholly incorrect. Mr. Redmond was the executive vice-president of the Bank of New Orleans at the time BNO and Marcello negotiated the loan. It is quite evident that Mr. Redmond's testimony does not constitute a judicial confession. Appellants' argument fails.
Appellants assert further that this case falls within the guidelines as set forth in Gulf States Finance Corp. v. Airline Auto Sales, 248 La. 591, 181 So.2d 36 (La.1965), and Wagenvoord Broadcasting Co. v. LeBlanc, 221 So.2d 282 (La.App. 4th Cir.1969). We disagree and find that these cases are clearly distinguishable from the instant case and in no way govern the outcome of the case before us.

III. THE $300,000 MISAPPLICATION
At the time the loan was made, Messrs. Robert Green and James Smith were the holders and owners of all of the shares of capital stock in a business known as Bayou Pontiac, Inc., which was substantially indebted to BNO.
It is Mr. Marcello's position that he is entitled to a Three Hundred Thousand Dollar ($300,000) credit against his $1.8 Million loan. Appellants vaguely argue that the loan to Marcello was structured so that Marcello receive One Million, Five Hundred Thousand Dollars ($1,500,000) and Messrs. Smith and Green receive $300,000 as a cash infusion to salvage their business. However, in asserting this claim, appellants have not filed a reconventional demand and Bayou Pontiac itself has neither brought such a claim nor has it been made a party to this suit.
Marcello was the maker of a note for a loan with a face value of $1.8 Million. Marcello testified, "I told them cold turkey, I go *492 for the million eight and I lend Green the three hundred thousand," and later repeated that he loaned the three hundred thousand to Green, Marcello did receive a $300,000 note executed by Bayou Pontiac and endorsed by Smith and Green. In fact, Marcello brought suit against Messrs. Green and Smith as endorsers of that note. Suit was not against Bayou Pontiac because it previously went bankrupt. However, Marcello failed to collect even against the endorsers because they too subsequently went into bankruptcy.
We cannot conclude, as did appellant, that the trial court erred in dismissing the appellants' claim for a $300,000 credit. We agree with the trial judge that this claim is without merit.
Therefore, for the above stated reasons, the judgment of the trial court is affirmed, assessing all costs of the appeal to appellants.
AFFIRMED.

On Reahearing
PER CURIAM.
Mover-appellant has requested rehearing alleging three errors by this court. These errors are as follows: The Court of Appeals erred (1) in not determining that the suit brought by plaintiff on the note was not premature; (2) in prohibiting the introduction of parol evidence to establish that there was an oral agreement to extend the promissory note an additional five years; and (3) in failing to allow an offset of Three Hundred Thousand and No/100 Dollars ($300,000.00) against the note sued upon as there was an alleged misapplication of part of the proceeds. These allegations essentially were the issues before this court on the original hearing of this matter.
As to Error Number 1, we find mover's argument to be virtually that as urged originally. We, therefore, stand firmly behind our interpretation of LSA-R.S. 9:5807 and dismiss this error for lack of merit.
As to Errors 2 and 3, we have given due consideration to the record and proffers and have found both to be replete with testimony which renders these errors meritless. In addition, we have studied Scafidi v. Johnson, 420 So.2d 1113 (La.1982), and conclude that the record, including the proffers, gave mover ample opportunity to show that the written note was only part of an entire oral contract between the parties.
Mover has further filed an amended and supplemental application for rehearing. In his brief in support thereof, mover has raised no new issues not previously addressed by the parties and by this court in its opinion dated January 10, 1983. In his brief, mover attempts, for the first time, to raise an issue regarding the rate of interest provided in the trial court's judgment. This issue is untimely. McFarland v. White, 13 La.Ann. 394 (1858); Troxler v. McFarlain, 308 So.2d 808 (La.App. 4th Cir. 1975); See also Court Rules, Courts of Appeal, Rules 1-3 and 2-12.4.
Accordingly, for the above stated reasons, both requests for rehearing are denied.
NOTES
[1] LSA-C.C.P. arts. 926, 423.
[2] Nathan & Marshall, The Collateral Mortgage, 33 La.L.Rev. 497, 507-08 (1973); See also Kaplan v. University Lake Corp., 381 So.2d 385, 390-91 (La.1979).
[3] LSA-R.S. 9:5807:

"A payment by a debtor of interest or principal of an obligation shall constitute an acknowledgment of all other obligations including promissory notes of such debtor or his codebtor in solido pledged by the debtor or his codebtor in solido to secure the obligation as to which payment is made. In all cases, the party claiming an interruption of prescription of such pledged obligation including a promissory note as a result of such acknowledgment shall have the burden of proving all of the elements necessary to establish the same.
Added by Acts 1970, No. 354, § 1. Amended by Acts 1975, No. 119, § 1, eff. July 7, 1975."