620 So.2d 526 (1993)
MANUEL TIRE CO., INC., Plaintiff-Appellant,
v.
J.W. HERPIN, INC., Defendant-Appellee.
No. 92-1148.
Court of Appeal of Louisiana, Third Circuit.
June 16, 1993.
*527 Michael Voorhies Matt, Eunice, for Manuel Tire Co., Inc.
Paul Joseph Hebert, Abbeville, for J.W. Herpin, Inc.
Mary Elizabeth Arceneaux, Baton Rouge, for Louisiana Bankers Assn.
Before DOUCET, KNOLL and COOKS, JJ.
KNOLL, Judge.
This is a security device case involving the prescriptive period of a collateral chattel mortgage note. Manuel Tire Company, Inc. (Manuel Tire) appeals[1] the dismissal of its petition for executory process filed against J.W. Herpin, Inc. (Herpin). The trial court ruled that the collateral chattel mortgage note was prescribed. Thus it enjoined the seizure and sale, and found that Herpin was entitled to $1,000 damages and attorney's fees of $1,000 from Manuel Tire for its wrongful issuance of a writ of seizure and sale.
Manuel Tire contends on appeal that the trial court was manifestly erroneous in: (1) finding that the collateral chattel mortgage note was prescribed for lack of acknowledgment within five years after its execution; and, (2) enjoining the seizure and sale of Herpin's property and in awarding Herpin damages and attorney's fees. For the following reasons, we reverse and remand.

FACTS
In early 1986, Manuel Tire sold its tire business and inventory located in Kaplan, Louisiana to Herpin for $86,194.21. From *528 the record it appears that this was a credit sale. Herpin executed a collateral promissory ("ne varietur") note dated April 12, 1986, in the amount of $100,000 payable on demand to Manuel Tire, properly paraphed for identification with an act of mortgage. To secure payment of the "ne varietur" note, Herpin executed a chattel mortgage on the movable property and inventory Herpin purchased from Manuel Tire. The "ne varietur" note was properly paraphed for identification with the chattel mortgage and was delivered to Manuel Tire. Appearing in the chattel mortgage was the following language:
"Mortgagor [Herpin] has made and subscribed promissory note dated and payable to the order of Manuel Tire Co., Inc., in the sum of $100,000.00, due and payable on demand, bearing interest at the rate of twelve (12%) percent per annum from date until paid. Mortgagor declares that the note herein described and this mortgage securing it are not given or issued in evidence of any specific debt, but are intended and shall be used as collateral to secure payment of any indebtedness now existing or hereafter to arise on the part of the Mortgagor, and specifically to secure future loans made by Mortgagor to secure which the within described note may at any time be pledged to the said Manuel Tire Co., Inc. and said Mortgagor is specifically authorized to pledge, without the necessity of any authentic act, said mortgage note to secure such indebtedness."
No hand notes[2] were executed at any time by Herpin to Manuel Tire. Rather, all transactions between Herpin and Manuel Tire were on open account, payable on terms of 30, 60 or 90 days after delivery.
The record shows that Herpin defaulted on its monthly payments. As a result, Manuel Tire filed a suit on open account against Herpin on October 11, 1991. At the time of trial, the suit on open account was still pending.[3] On October 21, 1991, Manuel Tire filed a petition for executory process to enforce the chattel mortgage that Herpin executed to secure the note.
When the sheriff seized Herpin's movable property on October 27, 1991, Herpin sought an injunction to arrest the seizure and sale and petitioned the court to award it damages for the wrongful issuance of the writ of seizure and sale. In support of its petition for an injunction and damages, Herpin alleged that "the debt secured by the mortgage [was] not legally owed, [was] extinguished and [was] otherwise legally unenforceable because the indebtedness is prescribed and/or no loan was ever made...."
After conducting a contradictory hearing, the trial court granted Herpin's request for an injunction, finding that the note was prescribed because Herpin had not signed a written re-acknowledgment of the note within five years after its execution. It also awarded Herpin $1,000 damages and $1,000 attorney's fees.

PRESCRIPTION OF NE VARIETUR NOTE
Manuel Tire contends that the trial court erred as a matter of law in finding that the "ne varietur" note was prescribed. Relying on LSA-R.S. 9:5807, it argues that no written re-acknowledgment was required because Herpin's payment of principal and interest on the open account, an obligation secured by the pledged "ne varietur" note, interrupted prescription. It further argues that the trial court's reliance on Bank of New Orleans v. H.P.B., Jr. Development, 427 So.2d 486 (La.App. 5th Cir.1983), was misplaced because that case was factual distinguishable.
*529 To the contrary, Herpin, relying on the Bank of New Orleans case, argues that the trial court correctly found that a written re-acknowledgment was necessary to preserve the mortgage in favor of Manuel Tire. Herpin further argues that payment it made on its open account with Manuel Tire did not interrupt prescription because these were not payments on other promissory notes secured by the "ne varietur" note.
From the outset, we must determine if it was possible for Manuel Tire to use the collateral chattel mortgage to secure Herpin's indebtedness, present and future, on open account.
A collateral mortgage is defined in LSA-R.S. 9:5550 as "... a mortgage that is given to secure a written obligation, such as a collateral mortgage note, negotiable or nonnegotiable instrument, or other written evidence of debt, that is issued, pledged, or otherwise used as security for another obligation." An obligation is defined in Civil Code Article 1756 as "... a legal relationship whereby a person, called the obligor, is bound to render a performance in favor of another, called the obligee. Performance may consist of giving, doing, or not doing something."
In the act of collateral mortgage, Herpin specifically stated that the "ne varietur" note
"... herein described and this mortgage securing it are not given or issued in evidence of any specific debt, but are intended and shall be used as collateral to secure payment of any indebtedness now existing or hereafter to arise on the part of the Mortgagor, and specifically to secure future loans made by Mortgagor to secure which the within described note may at any time be pledged to the said Manuel Tire Co., Inc. and said Mortgagor is specifically authorized to pledge, without the necessity of any authentic act, said mortgage note to secure such indebtedness." (Emphasis added.)
Under the codal definitions, we find that Herpin could have granted a collateral chattel mortgage to secure its open account, i.e., an obligation or series of obligations that Herpin had or would have to pay to Manuel Tire for purchases made. Likewise, it is clear that the mortgage document was not restricted to loans made by Herpin to Manuel Tire which were evidenced by a promissory note.
The next question we must address is whether Herpin's payments on its open account with Manuel Tire interrupted prescription on the "ne varietur" note.
In Kaplan v. University Lake Corp., 381 So.2d 385, 390-91 (La.1980), the Louisiana Supreme Court cited with approval from M. Nathan & G. Marshall, The Collateral Mortgage, 33 La.L.Rev. 497, as follows:
"The `ne varietur' note itself can prescribe, and being a demand note, the prescriptive period on the `ne varietur' note is five years. For that reason, until recently, it has been the customary practice to have the mortgagor sign a written acknowledgement on the `ne varietur' note within five years after execution of the note (and thereafter to repeat the procedure within five year periods) to prevent prescription from running. If he failed to do so, the `ne varietur' note prescribed, and while the hand note would nonetheless remain a valid obligation, it would no longer be secured by a mortgage and would simply reflect an unsecured debt (not `unsecured' legally, but unsecured practically in the sense that the security is virtually worthless, being the pledge of a prescribed note.) All too often lenders neglected or forgot (or were not advised) to obtain the written acknowledgement every five years, and found themselves holding prescribed mortgage notes. As a result, the Louisiana legislature enacted a special statute in 1970 to remedy the problem of prescription on notes such as the `ne varietur' note as it is used in the collateral mortgage situation. R.S. 9:5807 [former] provides as follows:
`The partial payment of a promissory note by the maker thereof shall interrupt prescription upon any and all other promissory notes which have been pledged by said maker to secure the *530 payment of the promissory note upon which the partial payment was made, if the pledged notes are held by the creditor to whom the partial payment was made, provided that in all such cases the creditor shall sustain the burden of proof that the pledged notes were in fact pledged to secure the note upon which the partial note [sic] was paid by the maker and that at the time of the partial payment the creditor receiving the partial payment was the holder of the pledged note or notes.'"
In 1975, the Louisiana legislature amended R.S. 9:5807[4] to read as follows:
"A payment by a debtor of interest or principal of an obligation shall constitute an acknowledgment of all other obligations including promissory notes of such debtor or his codebtors in solido pledged by the debtor or his codebtors in solido to secure the obligation as to which payment is made. In all cases the party claiming an interruption of prescription of such pledged obligation including a promissory note as a result of such acknowledgment shall have the burden of proving all of the elements necessary to establish the same." (Emphasis added.)
Commenting upon the 1975 amendments to LSA-R.S. 9:5807 in The Collateral Mortgage: A Reassessment and Postscript, 33 La.L.Rev. 973, p. 980 (1976), M. Nathan and G. Marshall stated:
"The 1975 amendment changed the law in several important respects. It applies to all `obligations' rather than to promissory notes only. The 1970 act only applied to payments made by the maker on a note. The new phraseology is much broader, but the statute obviously is aimed at collateral mortgage notes and hand notes. Also, payment is deemed to constitute an `acknowledgment' of the other obligations, rather than an interruption of prescription, as under the 1970 statute. By definition, however, an acknowledgment automatically interrupts prescription, so that the desired result clearly obtains, but it is expressed in broader civil law terms. Third, the 1975 act specifically defines payment to include payments of either interest or principal, thereby curing the ambiguity that existed in the 1970 statute. This change accords with the general law, since the payment of interest or principal constitutes an acknowledgment sufficient to interrupt prescription on an ordinary promissory note. The 1975 act creates an acknowledgment whenever any solidary debtor of the obligation makes a payment. Under prior law the payment had to be made by the maker of the note. The change reaches the same desired results, expressed in broader civil law terminology. The effect of the statute as amended is substantially broadened beyond the collateral mortgage situation and the statute now applies not only to promissory notes but also to all obligations of the debtor or his codebtors in solido that are pledged to secure the obligation on which payment is made."
We find that the 1975 amendments to LSA-R.S. 9:5807 broadened the application of this form of interruption of prescription from the debtor's (mortgagor's) payment on promissory notes to the debtor's payment on the obligations secured by the "ne varietur" note. Accordingly, we find that the trial court erred in its failure to consider payments Herpin made on its open account with Manuel Tire after the execution of the collateral chattel mortgage.
The ledger sheets which were introduced into evidence show numerous payments on Herpin's open account. The last date that *531 a payment was made was in October of 1988 for insurance which Manuel Tire obtained and billed Herpin through the open account. However, assuming that these insurance payments were not contemplated in the security agreement of the parties, the last partial payment that Manuel Tire documented for the trial court, by introducing a copy of the payment check into the record, was a $3,500 partial payment on December 22, 1986. Accordingly, at the very earliest, prescription began to run on December 23, 1986, and would have continued until December 23, 1991. Therefore Manuel Tire's initiation of this executory proceeding on October 21, 1991, was not time barred by prescription. See Gulf Shipping Co. v. McQuilling, 430 So.2d 1322 (La.App. 5th Cir.1983).
In reaching this conclusion, we find the trial court's reliance on the Bank of New Orleans case misplaced. In that case, the debtor, Carlos Marcello, borrowed money from the Bank of New Orleans. As security for the loan, H.P.B. Jr. Development Co., Inc. (HPB) pledged a collateral mortgage note on its property to secure Marcello's loan with BNO. HPB was not a comaker or a solidary surety nor was it personally liable to BNO for Marcello's indebtedness. Even though Marcello made some principal and interest payments during the first five years of the secured loan, prescription on the HPB "ne varietur" note which it pledged was not interrupted. In order for prescription to be interrupted under LSA-R.S. 9:5807, HPB had to execute a written acknowledgement of its "ne varietur" note because it was not a "codebtor in solido" with Marcello. Accordingly, the provisions of LSA-R.S. 9:5807 simply did not apply to the facts presented. However, in the present case, Herpin's payments on the open account fall well within the intendment of LSA-R.S. 9:5807. Therefore the trial court incorrectly relied upon the Bank of New Orleans case in finding that Herpin's "ne varietur" note was prescribed.

MANUEL TIRE'S WAIVER OF RIGHT TO PROCEED VIA EXECUTIVA
Alternatively, Herpin contends that even if prescription was interrupted and Manuel Tire's security interest was enforceable, Manuel Tire waived its right to proceed via executiva. It argues that once Manuel Tire filed a suit via ordinaria by filing a petition on open account to collect Herpin's indebtedness, Manuel Tire could not later proceed by executory process to enforce its collateral chattel mortgage.
LSA-C.C.P. Art. 2644 provides:
"The plaintiff in an executory proceeding may convert it into an ordinary proceeding by amending his petition so as to pray that the defendant be cited and for judgment against him on the obligation secured by the mortgage or privilege.
The plaintiff in an ordinary proceeding may not convert it into an executory proceeding."
The record shows that Manuel Tire's suit against Herpin was on an open account; it did not try to convert the suit into an executory proceeding. Therefore, we find Herpin's argument misplaced. Herpin is basically arguing the doctrine of election of remedies, namely, the pursuit of one remedy will exclude the pursuit of another remedy. However, this is so only where the remedies are inconsistent. Where remedies are concurrent and consistent, whether against the same person or different persons, a party may pursue one or all of such remedies until satisfaction is had. Finn v. Employers' Liability Assurance Corporation, 141 So.2d 852 (La.App. 2nd Cir.1962). Quoting further from Finn at page 863:
"... Where the law furnishes a party with two or more concurrent and consistent remedies he may prosecute one or all until satisfaction is had; but a satisfaction of one is a satisfaction of all. He may select and adopt one as better adapted than the others to work out his purpose, but his choice is not compulsory or final. Where the remedies afforded are inconsistent, it is the election of one of such remedies which operates as a bar; but where the remedies afforded are consistent, it is the satisfaction of *532 the claim which operates as a bar. (Emphasis supplied.)"
See also Gulf Shipping Co. v. McQuilling, supra.
Manuel Tire's suit for open account is not inconsistent with its suit for executory process to enforce its chattel mortgage. Manuel Tire can pursue both remedies, until Herpin's obligation to Manuel Tire is satisfied. Accordingly, Manuel Tire did not waive its right to proceed via executiva against Herpin.
For the foregoing reasons, the judgment of the trial court which recognized Herpin's exception of prescription and granted damages and attorney's fees for a wrongful seizure is reversed and set aside. IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that Herpin's exception of prescription is denied, and this matter is remanded to the trial court for further proceedings.
REVERSED AND REMANDED FOR FURTHER PROCEEDINGS.
NOTES
[1] The Louisiana Bankers Association filed an amicus curiae brief in support of Manuel Tire.
[2] For clarity and consistency, reference to the mortgage, "ne varietur" note, and hand note are in accordance with the designations made in footnote 18 of the article, Collateral Mortgage, Max Nathan, Jr. and H. Gayle Marshall, 33 La.L.Rev. 497 (1973).
[3] We note that at oral argument, Herpin stated that the suit on open account had been dismissed with prejudice after this appeal was briefed. Manuel Tire agreed with this statement. Nevertheless, since the dismissal of the suit on open account with prejudice is not part of the record before us, we are not called upon to address any effect this action may have on the enforceability of Manuel Tire's collateral chattel mortgage.
[4] LSA-R.S. 9:5807 has been amended twice more; however, neither of these amendments affect our analysis herein. In 1990, the Louisiana legislature added the following final sentence, "For purposes of this Section, a `pledged obligation' shall mean any obligation, including a promissory note, in which a security interest has been granted under Chapter 9 of the Louisiana Commercial Laws or the corresponding provisions of the Uniform Commercial Code as adopted in any other state, to the extent applicable." The 1991 amendment substituted, in the section heading, "pledge obligations" for "pledged obligations"; substituted, in the first and second sentences, "acknowledgement" for "acknowledgment"; and substituted, in the third sentence, "shall include any obligation" for "shall mean any obligation".