frFOGG, Judge.
This appeal arises following the dismissal of a suit on four promissory notes and a collateral mortgage, brought by plaintiff, Security National Partners, a Limited Partnership (hereinafter “Security”), against defendants, E. Ray Kothe and Century III Corporation (hereinafter “Century”), on the defendants’ peremptory exception pleading the objection of prescription.
Security urges on appeal that the trial court erred in failing to find prescription of defendants’ notes was interrupted by (a) the corporation’s pledge of a collateral mortgage note, (b) defendants’ tacit acknowledgment of the indebtedness through months of discussions with the creditor, (c) the filing of suit on the notes by the FDIC, (d) the filing of suit in federal court by the FDIC on related *103 notes secured by the same collateral, or (e) execution of renewal notes by the defendants.
FACTUAL BACKGROUND
During the 1980s, Capital Bank and Trust Company (hereinafter “Capital Bank”) was owed nearly $500,000 by Con-Sul Industrial Services, Inc. (hereinafter “CIS”), a corporation one-third of which was owned by E. Ray Kothe and two-thirds by individuals not party to this suit, E. George Cassis and Frank P. Simoneaux. CIS’s debt to Capital Bank was secured by the personal guarantees of the three shareholders (in the amount of $150,000 each) and the pledge of a collateral mortgage and note by Century.[1] Although Mr. Kothe held the position of vice-president of Century, he had no ownership interest in Century, which was owned solely by Mr. Cassis and Mr. Simoneaux.
In 1986, CIS was having financial problems, which prompted Capital Bank to require the three shareholders to assume personal ^responsibility for CIS’s nearly $500,000 debt, in the proportion of one-third each. Mr. Simoneaux testified that he and Mr. Cassis paid their portion of the debt to Capital Bank. Mr. Kothe covered his portion of the CIS debt by executing a $160,000 note in favor of Capital Bank. Mr. Kothe’s initial note for $160,000 was renewed by a subsequent note dated January 2, 1987, due and payable in full on March 3, 1987. Mr. Kothe executed two other notes payable to Capital Bank. One note was executed on January 12, 1987, in the amount of $40,000, due and payable in full on April 13, 1987, and the second note was executed on January 16, 1987, in the amount of $30,000, due and payable in full on March 2, 1987. The record does not indicate whether the notes for $40,000 and $30,000 represented business or personal debts of Mr. Kothe.
On October 30, 1987, all of the assets of Capital Bank, including the three Kothe notes and the Century $200,000 collateral mortgage and note, were transferred to the FDIC when it was appointed receiver of Capital Bank. The FDIC, in its capacity as receiver, immediately assigned the notes at issue to Capital Bank and Trust Co., National Association (hereinafter “CBTNA”), a private banking institution. In March of 1988, plaintiff alleges that Mr. Kothe delivered to CBTNA a renewal note to consolidate his notes; however, the renewal note can not be located and is only evidenced by inter-bank memoranda describing the renewal.[2] On May 23, 1988, CBTNA assigned the notes at issue to the FDIC in its corporate capacity. Plaintiff introduced into evidence correspondence and memoranda of the defendants and the FDIC regarding various discussions, meetings, and negotiations held regarding possible settlement of Mr. Kothe’s notes and the CIS debt, which, as noted above, was personally guaranteed by Mr. Kothe and the other two shareholders.[3] Although the FDIC filed two suits on October 16, 1992, against the defendants with regard Uto the notes at issue herein, the suits were voluntarily dismissed without prejudice by the FDIC’s attorney on October 19, 1992.[4] The FDIC transferred the three Kothe notes and *104 the Century $200,000 collateral mortgage and note to Security on September 17, 1993.[5]
Security filed this action on November 8, 1993. In response, defendants filed a peremptory exception pleading the objection of prescription, which was granted by the trial judge who dismissed the suit; the propriety of this judgment is the subject of the instant appeal.
INTERRUPTION OF PRESCRIPTION
While admitting suit was not filed within six years of the appointment of the FDIC as receiver as required by 12 U.S.C. Section 1821(d)(14), plaintiff contends the trial court failed to properly apply the statute. Plaintiff argues that this six-year period was interrupted as provided under Louisiana law, through acknowledgment by the debtor and/or the filing of suit by the creditor. Section 1821(d)(14) provides that the FDIC has the longer of six years from the date it was appointed receiver or the period available under state law in which to bring suit to enforce notes such as those at issue.[6] Plaintiff correctly cites the RLomsiana Supreme Court’s decision in N.S.Q. Associates v. Beychok, 94-2760 (La.9/5/95); 659 So.2d 729, as holding that an assignee of the FDIC also may choose the longer of these two time periods for purposes of the statute of limitations. However, the holding of N.S.Q. Associates does not support plaintiffs contention that Louisiana law may be utilized to extend the six-year federal statutory limitation period.
A plaintiff is given the benefit of having its claim tested under either state or federal law by 12 U.S.C. 1821(d)(14), but the statute does not authorize a plaintiff to combine the longer federal time period with Louisiana’s tolling principles to produce its own hybrid statute of limitations. Plaintiff, herein, has cited no authority permitting the FDIC or one of its assignees to utilize such a combination of the federal statutory limitation period and state tolling principles.[7] Furthermore, such an interpretation is at odds with the language of section 1821(d)(14) which unambiguously requires the plaintiff to file its claim in a timely manner under either state or federal law. In this case, the FDIC became receiver of Capital Bank on October 30, 1987; thus, under the six-year period allowed by section 1821(d)(14), the FDIC’s right to assert its claims expired on October 30, 1993. Plaintiff filed this action on November 8, 1993. Accordingly, the time for filing of plaintiff’s action under 12 U.S.C. 1821(d)(14) has expired.
We must next examine the viability of plaintiff’s suit under state prescriptive principles. In so doing, we reject the position espoused by defendants that since plaintiff “chose” to rely on the six-year federal limit which renders the action tolled, our inquiry should be closed. Plaintiff maintains in its | ¡¡alternative argument that this action remains viable under state law.
Prescription, in this instance, is governed by LSA-C.C. art. 3498, which provides:
*105 Actions on instruments, whether negotiable or not, and on promissory notes, whether negotiable or not, are subject to a libérative prescription of five years. This prescription commences to run from the day payment is exigible.
A plaintiff bears the burden of proving that prescription was interrupted where on the face of the petition it appears prescription has run. Younger v. Marshall Industries, Inc., 618 So.2d 866 (La.1993); Sun Oil Co. v. Tarver, 219 La. 103, 52 So.2d 437 (La.1951); Hunter v. Sisters of Charity of the Incarnate Word, 236 So.2d 565 (La.App. 1 Cir.1970). The notes at issue are: Mr. Kothe’s $160,000 promissory note due and payable in full on March 3, 1987; his $40,000 promissory note due and payable in full on April 13, 1987; and his $30,000 promissory note due and payable in full on March 2, 1987, as well as Century’s $200,000 collateral mortgage and note which was due upon demand and executed on May 2,1986. The plaintiff filed suit on November 8, 1993, and its petition does not allege that any payments were ever made on any of these notes; therefore, on the face of plaintiffs petition more than five years had passed with regard, to all four notes. Thus, unless plaintiff has proven that prescription was interrupted, the "matter has prescribed under state law as well.
Plaintiff makes several arguments based on its assertion that prescription was interrupted by acknowledgment, which is addressed by LSA-C.C. art. 3464:
Prescription is interrupted when one acknowledges the right of the person against whom he had commenced to prescribe.
The plaintiff first contends that the pledge of Century’s $200,000 collateral mortgage and note interrupted prescription, which does not run in favor of a debtor whose debt is secured by a pledge. See Kaplan v. University Lake Corporation, 381 So.2d 385 (La.1979). Assuming for the moment Century intended the pledge of its collateral mortgage and note to cover the individual debts of E. Ray Kothe, we note LSA-C.C. art. 3141 authorizes the pledge of ^property of a third person for the debt of another. However, defendants contend such a pledge can not serve as the type of continuing acknowledgement which interrupts prescription as contemplated by the Kaplan court. Defendants maintain that only the debtor himself can acknowledge his debt. We agree. In this case, the corporation, Century, pledged its own collateral mortgage and note; Mr. Kothe, individually, made no pledge.[8] Accordingly, we find that prescription could not have been interrupted as to Mr. Kothe’s individual debts by the pledge of the Century collateral mortgage and note.[9]
Plaintiff also contends that the trial court erred in failing to find that the various correspondence, memorandum, negotiations, etc., between the defendants and the FDIC constituted acknowledgment of the debt. Plaintiff cites Lima v. Schmidt, 595 So.2d 624 (La.1992), as authority for its contention that the numerous communications between the defendants and the FDIC constituted implicit or tacit acknowledgment because the defendants did not expressly deny that the debt was owed. However, Lima is distinguishable in that it involved a malpractice action against the parties’ attorney in which the attorney repeatedly acknowledged his error and his intent to make the plaintiff whole. The supreme court in Lima expressly distinguished the facts in that case from one involving settlement negotiations, which would not constitute an interruption of prescription, because it lacked the essential element of reciprocal concessions of both parties. In the instant ease, all of the documents introduced contained settlement-oriented terms (such as: negotiate, work-out, compromise, settlement, proposal or offer); and, required reciprocal concessions on the part of the creditors, namely, the acceptance of less than the full amount which the creditors asserted was owed.
*106 IsPIaintiff also invokes the Lima holding that even if a debtor’s actions do not constitute formal acknowledgment, he may still be liable for damages and may be prevented from invoking prescription if his conduct or actions lulled the creditor into believing that he did not intend to contest the liability. Likewise, the facts of the instant case do not arise to the level of “lulling.” The creditor during these negotiations, FDIC, did not evidence a belief that the defendants would not contest the debts sought to be collected; FDIC memoranda reference the running of prescription and a letter by the FDIC’s attorney voiced concerns over the running of prescription. Therefore, we are unable to say the trial court erred in failing to find acknowledgment of the debts by the defendants or the presence of lulling such as to interrupt the running of prescription.
Plaintiff also contends that prescription was interrupted by the filing of various suits by the FDIC, a matter governed by LSA-C.C. art. 3463, which provides:
An interruption of prescription resulting from the filing of a suit in a competent court and in the proper venue or from service of process within the prescriptive ■period continues as long as the suit is pending. Interruption is considered never to have occurred if the plaintiff abandons, voluntarily dismisses, or fails to prosecute the suit at the trial. [Emphasis added.]
Plaintiff contends that the filing of two FDIC suits on October 16, 1992, on the same notes at issue in this suit, interrupted prescription even though the FDIC voluntarily dismissed the suits on October 19, 1992, before the defendants were served. The testimony of the FDIC’s attorney clearly indicates that he considered the filing of said suits to be a mistake by a junior attorney while he was out of town and he moved to have said suits dismissed before the defendants were aware of same. Pursuant to LSA-C.C. art. 3463, interruption is considered never to have occurred if the plaintiff voluntarily dismisses the suit. We find the ease of Hebert v. Cournoyer Oldsmobile-Cadillac GMC, Inc., 419 So.2d 878 (La.1982), relied upon by appellant, distinguishable on the facts. In Hebert, dismissal without prejudice occurred after defendant had filed an answer, on the day 1¡¡of trial, and was by joint agreement of the parties who -contemplated the filing of a new suit. The Hebert court contrasted the factual scenario under its consideration with that addressed by former LSA-C.C. art. 3519 (now LSA-C.C. art 3463) and specifically noted the application of that article to a voluntary dismissal, without prejudice, filed prior to a general appearance by the defendant, such as took place herein.
Plaintiff also contends that the filing of suit by FDIC on October 28, 1993 (one month after the FDIC had assigned the notes at issue in this case to plaintiff), in federal court against Mr. Cassis, Mr. Simo-neaux and Con-Sul Corporation interrupted prescription because the federal suit was on “cross pledged collateral.” During the time period the notes forming the basis of this suit were executed, Con-Sul Corporation executed two notes, in the amounts of $275,000 and $15,000. To secure that indebtedness, Capital Bank obtained personal guarantees from Mr. Kothe, Mr. Cassis, and Mr. Simoneaux in the amount of $300,000 each. Additionally, Century pledged a promissory note in the amount of $350,000, which was marked “ne varietur” with an act of collateral mortgage on a different tract of immovable property than that involved herein. The October of 1993 federal suit sought to collect on Con-Sul Corporation’s $275,000 and $15,000 notes, the $300,000 personal guarantees of Mr. Cassis and Mr. Simoneaux, and sought recognition of the pledge of the Century $350,000 collateral mortgage and note.
Prescription is interrupted when an obli-gee commences action against the obligor in a court of competent jurisdiction. LSA-C.C. art. 3462. However, prescription is interrupted only as to the causes of action therein sued upon. LSA-C.C. art 3462; comment (b). Thus, plaintiff’s reliance on LSA-C.C. art. 3462 is misplaced; the debts sued upon herein are entirely different from those sued upon in the federal suit. Most notably, the federal suit seeks to enforce obligations of Con-Sul Corporation, its officers, shareholders, and guarantors, while the instant suit *107 seeks to enforce obligations of Con-Sul Industrial Services, Inc., (CIS), its shareholders and guarantors.
| a (Additionally, plaintiffs reliance on LSA-R.S. 9:5807 and Manuel Tire Co. v. J.W. Herpin, Inc., 620 So.2d 526 (La.App. 3 Cir.1993), is misplaced. As provided in LSA-R.S. 9:5807, a payment by a debtor of an obligation constitutes acknowledgement of all other obligations including promissory notes of such debtor or his co-debtors, in solido, pledged by the debtor or his co-debtors, in solido, to secure the obligations on which payment is made. No payment on the debts forming the basis of this lawsuit was proven to have been made. However, Mr. Simoneaux testified that he and Mr. Cassis paid their portion of the CIS debt sometime in 1987. Even if these payments were imputable to Mr. Kothe as a co-debtor, prescription nevertheless began to run anew following payment, pursuant to LSA-C.C. art. 3466, and resulted in prescription of the notes in question in 1992.
Similarly, Century’s obligation under the $200,000 collateral mortgage and note which it pledged to secure the CIS debt has prescribed. A pledged note is susceptible of prescription even though prescription on the debt it secures may be interrupted by virtue of the existence of the pledge. Kaplan, 381 So.2d at 390. Unless the collateral mortgage note is acknowledged prior to the running of five years, it prescribes under LSA-C.C. art. 3498. Since Century was not a co-debtor of CIS or Mr. Kothe on the promissory notes at issue, merely a guarantor, LSA-R.S. 9:5807 can not be applied to interrupt prescription as to Century’s pledged $200,000 collateral mortgage and note. See Bank of New Orleans and Trust Company v. H.P.B., Jr. Development Company, 427 So.2d 486 (La.App. 5 Cir.), remanded on other grounds, 435 So.2d 447 (La.1983).
Finally, plaintiff alleges that the trial court erred in not finding that prescription was interrupted by the alleged March 1988 renewal of defendants’ notes. Review of the record reflects that plaintiff could not produce either the original renewal note or a copy thereof. Furthermore, plaintiff did not introduce the testimony of anyone who witnessed the execution of said renewal note or negotiated same. Instead, plaintiff introduced only inter-bank memoranda referencing the renewal; and, one bank | nemployee testified he saw a signed renewal note but he was unable to say execution of the renewal had been completed. Based on the record, we are unable to say the trial court erred in discounting the existence of a renewal.
For the reasons assigned herein, the trial court’s decision granting defendants’ peremptory exception pleading the objection of prescription and judgment dismissing the suit are hereby affirmed. All costs of this appeal are to be borne by appellant, Security National Partners, a Limited Partnership.
AFFIRMED.

.The collateral mortgage and note consisted of a promissory note executed by Century on May 2, 1986, in the amount of $200,000, marked “ne varietur” with an act of collateral mortgage on two immovable properties. The act of pledge whereby this collateral mortgage and note was pledged to Capital Bank was authorized by a resolution of Century, allowing the pledge of the notes as security for any and all indebtedness of CIS, E. Ray Kothe, E. George Cassis or Frank P. Simoneaux and which indicated the pledge was to be used for a line of credit for CIS’s operations. For simplicity, we refer to this security package hereinafter as the “Century $200,000 collateral mortgage and note.”

. Defendants contend a renewal note was not executed, only discussed.

. Defendants contend the admission of these documents into evidence was error, and alternatively argue that the statements therein do not constitute acknowledgment of the debt.

. The FDIC suits also made Mr. Simoneaux and Mr. Cassis defendants on the underlying debt as well as on their continuing guarantees. The FDIC named Mr. Cassis, Mr. Kothe and Mr. Simoneaux defendants in one suit and named Century defendant in the other suit. These suits were filed on a Friday afternoon and dismissed the following Monday morning.

. The FDIC did not assign to the plaintiff the notes of another interrelated corporation, Consul Corporation or a second collateral mortgage and note executed by Century for $350,000, but instead, on October 28, 1993, the FDIC filed suit in federal court against Mr. Cassis, Mr. Simo-neaux and Con-Sul Corporation; the defendants in this case were not named therein. Plaintiff, herein, intervened in the federal suit claiming that the Century $350,000 collateral note also secured Mr. Kothe’s notes. Upon settlement of the FDIC's federal suit, the parties consented to the FDIC’s deposit of the $350,000 note in the present suit without prejudice to any of the parties.

. 12 U.S.C. 1821(d)(14) provides:
Notwithstanding any provision of any contract, the applicable statute of limitations with regard to any action brought by the Corporation as conservator or receiver shall be—
(i) in the case of any contract claim, the longer of—
(I) the 6-year period beginning on the date the claim accrues; or
(II) the period applicable under State law; and
[[Image here]]
... [T]he date on which the statute of limitations begins to run on any claim described in such subparagraph shall be the later of—
(i) the date of the appointment of the Corporation as conservator or receiver; or
(ii) the date on which the cause of action accrues.

. Accord Resolution Trust Corporation v. Aycock, 92-0761, slip op. (E.D.La. 12/14/93), 1993 WL 534127.

. While it is true that the actual pledge of this collateral was signed by Mr. Kothe, he purported to do so in his capacity as vice-president of Century.

. Because we have resolved the issue on this point, we find it unnecessary to address whether the pledge by Century of its collateral mortgage and note was, in fact, also a pledge to secure the individual debts of Mr. Kothe.